PAULA DRAKE, Adm'r of the Estate of Theodore E. Drake, Deceased, Plaintiff-Appellee and Separate Appellant, v. EMMETT THOMAS HARRISON, JR., Defendant-Appellant (Bobby G. Harrison, Defendant and Separate Appellee).

Fifth District No. 5—85—0269

Opinion filed January 15, 1987.

Michael F. Dahlen and John C. Ryan, both of Feirich, Schoen, Mager, Green & Associates, of Carbondale, for appellant.

Raymond Lawler, P.C., of Marion, for Paula Drake.

James B. Bleyer, of Marion, for appellee Bobby G. Harrison.

JUSTICE WELCH delivered the opinion of the court:

This wrongful-death action arose out of a collision between two pickup trucks. In one pickup truck were defendant Emmett Harrison, Jr., (the driver), defendant Bobby Harrison, and Theodore Drake, plaintiff's decedent. The Jackson County circuit court granted Bobby Harrison's motion for summary judgment. A jury returned a verdict in favor of the plaintiff in the amount of $375,000. The jury found plaintiff's decedent 39% comparatively negligent, reducing the verdict in favor of plaintiff to $228,750. Defendant Emmett Harrison appeals. Plaintiff appeals the summary judgment in favor of Bobby Harrison.

The Harrison truck was driving on a two-lane road in Jackson County when it began to "fishtail." Decedent sat on the right side of the truck's only seat. Ada Davis, driver of the oncoming truck, noticed the fishtailing and stopped her truck after driving it partially off her side of the road. There was no centerline. The Harrison truck continued to fishtail or swerve until it reached the Davis truck. The right-side door of the Harrison truck struck the front of the Davis truck, killing decedent.

The sole occurrence witnesses testifying at trial were Emmett Harrison, Bobby Harrison, Ada Davis, and her husband Tom Davis. A State trooper described the road on which the wreck occurred as follows: it was blacktop, fairly level without steep hills, and fairly straight; there were no potholes; the pavement was 19 to 20 feet wide; the speed limit was 55 miles per hour; and the road was wet from a recent light rain. The Harrisons' and the Davises' descriptions of the road were consistent with the trooper's.

Tom Davis testified as follows: When he first saw the Harrison

truck, about half a mile away, it was fishtailing. The witness told his wife to watch that truck. The Harrison truck went straight for a time, then fishtailed again. Mrs. Davis pulled partially off the road to the right and stopped with only the two left-side wheels on the pavement. After the second fishtail the Harrison truck proceeded straight again, then "swerved" four times across both sides of the road. The Harrison truck never left the road. Mr. Davis testified that in his opinion the Davis truck's speed prior to slowing was about 45 miles per hour; the speed of the Harrison truck was 60 to 70 miles per hour as it came toward them and "every bit of sixty" at the point of the wreck; the time from his first sighting of the Harrison truck to the impact was 8 to 10 seconds; in all, the Harrison truck executed two fishtails and four "swerves."

Ada Davis' testimony was essentially the same as her husband's. She described the Harrison truck's initial maneuvers as "fishtails" and later ones as "big weaves." She estimated her truck was stopped for 6 to 10 seconds prior to the impact. She testified the Harrison truck appeared to be about to miss them until it came across the road just prior to the impact. She was cross-examined and testified in part:

"Q. Did it appear that the vehicle went out of control and then came back into control again, is that correct?

A. Yes.

Q. And he never did, apparently, get the vehicle back under control, is that correct?

A. Yes, he got it back under control."

Bobby Harrison testified as follows: "Right before" the accident, decedent reached in front of Bobby, grabbed the steering wheel and pushed up on it, sending the truck into a slide. Emmett tried to control it. The witness did not know the Harrison truck's speed. The witness admitted that at his deposition he said decedent pulled down on the wheel and that the speed of the Harrison truck was 50 to 55 miles per hour.

Emmett Harrison testified as follows: His speed was about 50 miles per hour. He and his passengers were in a jovial mood because they were going home from work. In a "playful mood" decedent reached across Bobby and pushed the steering up, saying as he did so, "Hit that camper, see if I care." The truck went sideways and was out of control until the impact. The witness did not brake until the crash was imminent; then he "locked up" the brakes. The time from decedent's interference to the impact was less than 10 seconds, probably 6 or 8. His vehicle was not off the pavement prior to the wreck. He admitted that in a prior statement he said gravel caused the back

end of his truck to come around just prior to the impact.

■■■ In his appeal, Emmett Harrison argues the verdict against him and in favor of decedent's administrator was against the manifest weight of the evidence. Specifically, Emmett argues the sole proximate cause of the wreck was decedent's interference with the steering wheel. There was no direct testimonial contradiction of Emmett's and Bobby's testimony regarding decedent's actions. Where the testimony of a witness is neither contradicted by testimony or circumstances, nor inherently improbable, and the witness has not been impeached, that testimony may not be disregarded even by a jury. A jury may not make an affirmative finding that the exact opposite of a witness' testimony is true if there is no evidence to support such a finding. (*People ex rel. Brown v. Baker* (1981), 88 Ill. 2d 81, 85-86, 430 N.E.2d 1126, 1127-28.) There was evidence from which the jury could have found decedent's interference with the wheel was not the sole proximate cause of the wreck. The Davises both testified the Harrison truck fishtailed half a mile away, and that between its several aberrant maneuvers, it continued on straight. Mrs. Davis testified that in her opinion the Harrison truck was under control after the fishtails, but even without this express opinion, the timing and distances involved support that conclusion. Mrs. Davis described the Harrison truck's final maneuvers as "weaves." Mr. Davis described them as four "swerves." Neither term connotes lack of control, in our view. The Davises also testified regarding the Harrison truck's high rate of speed throughout the sequence of events in question. On the whole, we believe this was sufficient circumstantial evidence that Emmett Harrison's failure to exercise due care for decedent's safety was a proximate cause of decedent's death.

Emmett Harrison raises several issues regarding the jury instructions. First, he argues the trial court erred in giving Illinois Pattern Jury Instruction, Civil, No. 15.01 (2d ed. 1971) (hereinafter cited as IPI Civil 2d) in its entirety because it invited the jury to speculate that a third party's negligence was a cause of the wreck. The short version of IPI Civil 2d No. 15.01 defines proximate cause as "a cause which, in natural or probable sequence, produced the injury complained of." The complete instruction adds to the short version: "It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury." Where there is no evidence of a third party's negligence, the long form of IPI Civil 2d No. 15.01 is inapplicable. *Bass v. Washington-Kinney Co.* (1983), 119 Ill. App. 3d 713, 722, 457 N.E.2d 85, 93; see *Lindsay v. Appleby*

(1980), 91 Ill. App. 3d 705, 713, 414 N.E.2d 885, 891.

■■ ■ However, we are not persuaded that Emmett was prejudiced by the trial court's giving IPI Civil 2d No. 15.01 in long form. The test is whether the instructions taken together fully and fairly apprised the jury of the relevant principles. (*Bass v. Washington-Kinney Co.* (1983), 119 Ill. App. 3d 713, 723, 457 N.E.2d 85, 93; see *Casey v. Baseden* (1986), 111 Ill. 2d 341, 349, 490 N.E.2d 4, 7.) Here the jury was thoroughly instructed concerning proximate cause. Instructions given included IPI Civil 2d No. 45.01, modified, instructing the jury to assume 100% represented the total combined negligence of Emmett and decedent and requiring the jury to determine the percentage attributable to decedent; IPI Civil 2d No. A21.02 which states plaintiff has the burden of proof that defendant's negligence was a proximate cause of decedent's injury; and IPI Civil 2d No. 11.01, which defines contributory negligence as negligence on the part of decedent that proximately contributed to cause his death. In light of all of these instructions, we disagree with Emmett's contention that IPI Civil 2d No. 15.01 as given could have caused the jury to speculate that a third person's negligence was a cause of decedent's death. We find no cause for reversal here.

■■ ■ Emmett argues the trial court erred in giving the jury a non-IPI definition of "society" as follows: "The term 'society' means the broad range of mutual benefits which one family member receives from the other including: love, affection, attention, companionship, comfort and protection." The court also gave IPI Civil 2d No. 31.04 (modified), which instructed the jury to consider with respect to damages "[w]hat services, society, companionship and conjugal relationship he might reasonably have been expected to give his wife had he lived"; and IPI Civil 2d No. 32.04, which instructed the jury to fix the reasonable value of the "society, companionship, and conjugal relationship with her husband" of which plaintiff was deprived. Emmett argues defining "society" in a jury instruction "gave undue emphasis to plaintiff's elements of damages; and it provided, in effect, double recovery to the plaintiff widow." Emmett also urges "society" is commonly used and generally understood.

The parties have provided no direct authority concerning such an instruction, and we find none. Jury instructions should not unduly emphasize any particular matter or be repetitious. (*Montefusco v. Cecon Construction Co.* (1979), 74 Ill. App. 3d 319, 325, 392 N.E.2d 1103, 1107.) In general, words of common usage and understanding need not be defined or explained in instructing the jury. (*De Rosa v. Albert F. Amling Co.* (1980), 84 Ill. App. 3d 64, 75, 404 N.E.2d 564, 572.)

Words used in their conventional sense need not be explained. Ordinary words used in unusual or technical senses need definition. (*Houck v. Martin* (1980), 82 Ill. App. 3d 205, 213, 402 N.E.2d 421, 428.) In light of these principles, we believe the need to define "society" here outweighed the danger of overemphasis. Further, the definition given was brief and unargumentative, as is appropriate for a non-IPI instruction. (See 87 Ill. 2d R. 451(a).) We find no abuse of discretion in giving this instruction. See *Hollembaek v. Dominick's Finer Foods, Inc.* (1985), 137 Ill. App. 3d 773, 780, 484 N.E.2d 1237, 1242.

While we find no error in the defining of "society" in this case, we also conclude Emmett has demonstrated no prejudice resulting from the instruction. Instructions erroneously given may nevertheless be harmless. (*Houck v. Martin* (1980), 82 Ill. App. 3d 205, 214, 402 N.E.2d 421, 428.) The loss of decedent's "society" was a relatively minor matter in a monetary sense. Absent definition the jury might have assumed it to be a matter of greater significance. There is no reason to assume misleading the jury would have benefited Emmett.

■■ Emmett argues the trial court erred in several respects in giving plaintiff's version of the issues instruction, IPI Civil 2d No. A20.01, as follows:

"The plaintiff claims she was injured and sustained damages as a result of the death of Theodore Drake and that defendant was negligent in one or more of the following respects:

(a) Failed to keep his vehicle under proper control so as to avoid crashing into the vehicle driven by Ada V. Davis.

(b) Failed to decrease the speed of his vehicle, having regard for weather and highway conditions, so as to endanger the safety of Theodore Drake, deceased.

(c) Failed to give at least one-half of the main traveled portion of the roadway, as nearly as possible, to the vehicle driven by Ada V. Davis.

(d) Failed to apply the brakes on said vehicle to reduce its speed, or to turn to the right when the defendant thereof saw or should have seen said approaching Ford pickup truck.

The plaintiff further claims that one or more of the foregoing was a proximate cause of the decedent's death.

The defendant denies that he was negligent in doing any of the things claimed by the plaintiff and denies that any of the claimed acts or omissions on the part of the defendant was a proximate cause of the claimed injuries.

The defendant claims that the plaintiff's decedent's death

was proximately caused in whole or in part by the negligence of the plaintiff's decedent or hereinafter stated:

(a) Theodore E. Drake interfered with the control of the vehicle's driver, Emmett Thomas Harrison, Jr.

(b) Theodore E. Drake jerked the steering wheel of the vehicle being operated by Emmett Thomas Harrison, Jr., causing the loss of control of the vehicle and the resulting collision.

The plaintiff denies that the plaintiff's decedent was contributorily negligent; she further denies that it proximately caused the death; she further denies that the compensation for the death should be reduced in whole or in part."

Emmett argues plaintiff substituted "compensation" for "damages" in this instruction, thus presuming plaintiff "was already entitled to recover something." The test is whether the instructions taken together fully and fairly apprised the jury of the relevant principles. (*Bass v. Washington-Kinney Co.* (1983), 119 Ill. App. 3d 713, 457 N.E.2d 85.) Assuming plaintiff's instruction was misleading as Emmett claims, we believe the remainder of the instructions was sufficient to dispel any such misunderstanding. In particular, the jury was instructed that plaintiff had the burden of proving Emmett acted or failed to act in one of the ways claimed by plaintiff, that Emmett's negligence was a proximate cause of decedent's death, and that if either of these propositions was not proved, the verdict should be for Emmett (IPI Civil 2d No. A21.02). The court also instructed that if the jury decided for Emmett on the question of liability, there would be no occasion to consider the question of damages (IPI Civil 2d No. 36.01). Taken together these instructions adequately apprised the jury that it was for them to decide whether plaintiff was entitled to any damages whatsoever.

■ Emmett argues the same instruction was improper because evidence showed neither defendant's speed nor his failure to apply the brakes or turn to the right was a proximate cause of decedent's death. We disagree. The Davises testified regarding Emmett's high rate of speed throughout the episode. Emmett admitted failing to brake until the collision was imminent. On this evidence either Emmett's speed or his failure to brake could have been found to be a proximate cause of the wreck and decedent's death. Whether the proof was sufficient was for the jury to decide. Similarly, while Emmett argues turning right will not always prevent a collision, it was for the jury to decide whether such was true in this case. We find no error in instructing the jury regarding plaintiff's allegations of negli-

gence.

■ Emmett argues the same instruction conveyed the erroneous impression that Emmett admitted the acts and omissions alleged by plaintiff but denied those acts and omissions amounted to negligence. Assuming this instruction standing alone might be so interpreted, we believe other instructions which the trial court gave and we discuss above (IPI Civil 2d Nos. A21.02 and 36.01) correctly apprised the jury of Emmett's position.

■ Emmett argues the trial court erred in instructing the jury that it might consider whether Emmett violated an Illinois statute prohibiting driving at a speed greater than is reasonable and proper or a speed which endangers other people or property. (Ill. Rev. Stat. 1985, ch 95½, par. 11—601.) Emmett contends there was insufficient evidence of his driving at an excessive speed. We have noted above our disagreement with this argument in light of the Davises' testimony regarding Emmett's speed and Emmett's admissions regarding failure to brake. There was sufficient evidence to give this instruction.

Emmett argues the trial court erred in instructing on a second statutory violation, this one concerning the requirement of giving at least half the roadway to vehicles passing in the opposite direction. (Ill. Rev. Stat. 1985, ch. 95½, par. 11—702.) Emmett's brief refers us to his prior argument that the sole proximate cause of the wreck was decedent's grabbing the wheel. As we note above, the jury could have found that Emmett could have prevented leaving his own side of the road, based on the Davises' testimony that the Harrison truck appeared to be under control after correcting each fishtail. We find no error in giving this instruction.

In summary, we find sufficient evidence of record to support the judgment of the trial court in favor of plaintiff and against Emmett Harrison, and we find no instructional error or errors that rendered the trial unfair. Accordingly, the judgment in plaintiff's favor and against Emmett Harrison is affirmed.

■ We turn to plaintiff's cross-appeal. Plaintiff contends the trial court erred in entering summary judgment in Bobby Harrison's favor and against plaintiff. Summary judgment should be rendered if the pleadings, depositions, and admissions on file and the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).

Plaintiff contends there was a material question of fact regarding the extent to which Bobby Harrison engaged in horseplay prior to the wreck, as well as the extent to which this horseplay interfered with

Emmett's driving. Deposed, the Davises testified they saw no horse-play in the Harrison truck. In his deposition Emmett was examined and testified as follows:

"Q. Can you describe what you saw or heard as to the touching in between [Bobby and decedent]?

A. Exactly what they were doing, I don't know.

Q. Weren't they jabbing each other with elbows?

A. Something on that order.

Q. Did they push over into you?

A. A couple of times.

Q. How long prior to the wreck, in your best judgement [*sic*], as to seconds?

A. It would have been minutes."

Bobby was examined by telephone prior to trial and stated as follows:

"Q. Did it also involve physical contact between the three of you?

A. No.

Q. No?

A. No, There was never, uh—

Q. Like in [*sic*] elbow to the ribs, or somethin [*sic*] like, a little shove, or anything like that.

A. Oh yeah, you give some nudge, yeah.

Q. Yeah. How long had that been going on before the accident happened?

A. That I can't recollect, I don't know.

Q. A couple of minutes maybe?

A. Oh yeah, probably."

■■■ Based on the above testimony, plaintiff suggests two theories: first, that Bobby's physical contact with Emmett was a proximate cause of the wreck; second, that Bobby and decedent were engaged in horseplay which caused the wreck. We conclude neither theory is sustained to the level of a material question of fact on this record. Bobby's and Emmett's testimony that any contact between the two preceded the wreck at least by "minutes" is uncontradicted. There is no basis on this record to conclude that elbowing the driver could have been a proximate cause of a wreck "minutes" later.

■■■ The second theory is also unsupported by the record or fair inference therefrom. Bobby was not legally responsible for decedent's alleged negligent acts on some quasi-criminal accountability theory. It remains uncontradicted that any physical contact between Emmett and Bobby occurred "minutes" before the wreck and that the only physical interference with the driver was decedent's. There is simply

no factual basis on this record for any inference more damaging to Bobby. The summary judgment was proper and is affirmed.

For the foregoing reasons, the judgment of the circuit court of Jackson County is affirmed.

Affirmed.

KARNS, P.J., and HARRISON, J., concur.