No. 3-06-0811
_____

Filed December 4, 2007

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| MARY P. SMITH, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit |
| Plaintiff-Appellee. | ) | Will County, Illinois |
| | ) | |
| v. | ) | |
| | ) | No. 03-L-517 |
| JOY D. MARVIN, M.D. and | ) | |
| SURGICAL CONSULTANTS OF | ) | |
| JOLIET, LTD., | ) | Honorable |
| | ) | James E. Garrison |
| Defendants-Appellants. | ) | Judge Presiding |

_____

PRESIDING JUSTICE LYTTON delivered the Opinion of the court:
_____

Plaintiff, Mary P. Smith, sued defendants, Dr. Joy Marvin and Surgical Consultants of Joliet, Ltd., for medical malpractice. In the first count of her complaint, plaintiff alleged that Dr. Marvin negligently performed surgery on her. The second count alleged that Dr. Marvin did not properly advise plaintiff of the risks of surgery. The jury found in favor of plaintiff on both counts and awarded her $2 million in damages, including $1 million in lost earnings. On appeal, defendants argue that (1) the trial court erred in giving certain jury instructions, and (2) the evidence did not support the jury's verdict on either count of plaintiff's complaint or its award of lost earnings to plaintiff. We affirm.

BACKGROUND

In 2001, plaintiff consulted her primary care physician, Dr. Robert Ireland, after she noticed a swollen area in her right armpit. Dr. Ireland referred plaintiff to Dr. Marvin, who ordered

an ultrasound and mammogram. The ultrasound and mammogram showed that the mass was not cancerous. Nevertheless, Dr. Marvin recommended surgically removing it. Dr. Marvin did not discuss with plaintiff any alternatives to surgery, such as a biopsy or observation. Dr. Marvin informed plaintiff that the risks associated with the surgery included bleeding and infection but did not warn plaintiff that she may develop lymphedema or Reflex Sympathetic Dystrophy Syndrome (RSD) as a result of the surgery.

Dr. Marvin performed the surgery and removed the mass, which was benign. According to Dr. Marvin, she did not enter the deep axillary space (or "axilla proper") or otherwise violate the standard of care when she performed surgery on plaintiff. Dr. Marvin testified that she did not advise plaintiff of the risks of developing lymphedema or RSD as a result of the surgery because those risks were remote. She did state that the risk of lymphedema when entering the axilla proper is quite high, approximately twenty to thirty percent.

Soon after the surgery, plaintiff developed a seroma, which is a gathering of fluid beneath the skin. Plaintiff then developed lymphedema, which is fluid retention caused by a damaged lymphatic system. Finally, plaintiff developed RSD. As a result of these conditions, plaintiff has pain and decreased mobility in her right arm.

Plaintiff filed a two-count complaint against Dr. Marvin and Surgical Consultants. According to Count I, Dr. Marvin, as an agent of Surgical Consultants, was negligent because she (a) removed excess tissue during surgery, (b) failed to perform a biopsy prior to surgery, and (c) used inappropriate suture

2

ligatures.  Count II alleged that Dr. Marvin was negligent for failing to inform plaintiff of the risks of the surgery.

Plaintiff testified that after her surgery she was unable to return to her previous employment as a project manager at Hewitt Associates because of the condition of her arm.  At that job, plaintiff was paid an annual salary of $46,000 and would receive 3.5% annual pay raises up to a maximum salary of $54,000.  Prior to surgery, plaintiff intended to work at Hewitt until she was 65 years old.  After her surgery, she tried to seek employment elsewhere by mailing out resumes but received no responses. Plaintiff also considered other occupations but felt she could not perform them effectively because of the pain and drowsiness she experienced.

Dr. Phillip Greenberg, a neurologist, testified on behalf of plaintiff.  He concluded that plaintiff suffered from RSD, caused by Dr. Marvin removing too much tissue during the surgery.  He testified that the more resection that occurs in the axilla, the more likely it is for a patient to develop lymphedema.  According to Dr. Greenberg, plaintiff will experience pain in her arm for the rest of her life and will become totally disabled because of her inability to use her right arm.

Dr. Michael Drew, a surgeon, testified that the procedure performed by Dr. Marvin was too radical and was not properly performed.  Based on the medical records and plaintiff's injuries, Dr. Drew believed that Dr. Marvin entered the deep regions of the axilla.  He testified that Dr. Marvin deviated from the standard of care by using suture ligatures in the axilla, which caused or contributed to plaintiff developing lymphedema and RSD.  He also

3

opined that plaintiff was not properly informed of the complications that could result from the surgery, including lymphedema and RSD.

Dr. John Paul Sorin, a specialist in internal medicine, testified that plaintiff's lymphedema was a permanent condition resulting from the surgery performed by Dr. Marvin. Dr. Sorin concluded that plaintiff would have pain in the future as a result of lymphedema.

Dr. Robert Ireland found that plaintiff had lymphedema as a result of the surgery Dr. Marvin performed. He testified that plaintiff is partially disabled because she has difficulty using her right arm.

Testifying on behalf of defendants was Dr. David Shenker, a neurologist. According to Dr. Shenker, the medical causes of lymphedema and RSD are unclear. He agreed that plaintiff developed RSD from the surgery, but he did not know why. He testified that there is no way to know if plaintiff's RSD will totally deprive her of the use of her arm.

Dr. Steven Bines, a surgical oncologist, testified that Dr. Marvin did not enter the axilla proper during plaintiff's surgery. He opined that Dr. Marvin met the surgical standard of care in her treatment of plaintiff. He also testified that Dr. Marvin was not required to warn plaintiff of lymphedema or RSD because they were unusual and remote consequences of plaintiff's surgery.

At trial, the parties disagreed about what instruction should be given to the jury to explain professional negligence. Plaintiff requested that the trial court use the 2006 version of Illinois Pattern Jury Instruction (I.P.I.) 105.1. The trial judge refused

plaintiff's request because he did not believe that instruction accurately stated the law. Defendants offered the 2005 versions of I.P.I. 105.1 and I.P.I. 105.2, which the trial court also refused. As a result, both plaintiff and defendants offered non-I.P.I. instructions. The trial court submitted plaintiff's proposed instruction to the jury:

> "'Professional negligence' by a general surgeon is the failure to do something that a reasonably well-qualified general surgeon would do, or the doing of something that a reasonably well-qualified surgeon would not do, under the circumstances similar to those shown by the evidence.
>
> In providing professional services, a general surgeon must possess and apply the knowledge and use the skill and care ordinarily used by a reasonably well-qualified general surgeon under the circumstances similar to those shown by the evidence. A failure to do so is professional negligence.
>
> The phrase 'deviation from the standard of care' means the same thing as 'professional negligence.'
>
> To determine the standard of care in this case, you must rely upon opinion testimony from expert witnesses. The law does not say how a reasonably well-qualified general surgeon would act under these circumstances. That is for you to decide after basing your decision on the evidence presented through expert witnesses presented at trial. You must not attempt to determine this question from any personal knowledge that you may have."

The parties also disagreed on a proximate cause instruction.

5

Plaintiff offered the long form of I.P.I. 15.01 to the court, while defendant offered the short form of that instruction. The trial court allowed the long form, as set forth below, to be given to the jury:

> "When I use the expression 'proximate cause', I mean a cause which, in natural or probable sequence, produced the injury complained of. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury."

In closing argument, plaintiff's attorney requested a verdict in plaintiff's favor, including lost earnings totaling $1,450,000. That figure was based on plaintiff's salary prior to her surgery and assumed that plaintiff would receive annual pay raises up to a maximum annual salary of $54,000 and also assumed that plaintiff would work until she was 65 years old.

The jury returned a verdict for plaintiff and against defendants on both counts of plaintiff's complaint. The jury awarded plaintiff $1 million for lost earnings, $500,000 for pain and suffering, and $500,000 for loss of normal life.

## I.  JURY INSTRUCTIONS

The determination of proper jury instructions rests with the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. Surestaff, Inc. v. Azteca Foods, Inc., 374 Ill. App. 3d 625, 627, 872 N.E.2d 428, 446 (2007).

"Whenever Illinois Pattern Jury Instructions (I.P.I.) contains an instruction applicable to a civil case, giving due consideration to the facts and the prevailing law, and the court determines that

6

the jury should be instructed on the subject, the I.P.I. instruction shall be used, unless the court determines that it does not accurately state the law." 177 Ill.2d Rule 239(a) (1999). I.P.I. instructions should be modified if they do not accurately state the law. Ruperd v. Ryan, 291 Ill. App. 3d 22, 36, 683 N.E.2d 166, 175 (2d Dist. 1997).

In determining the propriety of tendered instructions, a reviewing court must consider whether the jury was fairly, fully and comprehensively informed as to the relevant legal principles. Campbell v. Wagner, 303 Ill. App.3d 609, 611, 708 N.E.2d 539, 541 (1999); Dahan v. UHS of Bethesda, Inc., 295 Ill. App. 3d 770, 692 N.E.2d 1303 (1998). The refusal to give an instruction will result in a new trial only when the refusal amounts to a serious prejudice to a party's right to a fair trial. Dahan, 295 Ill. App. 3d at 777, 692 N.E.2d at 1308.

A. Professional Negligence Instruction

Defendants argue that they are entitled to a new trial because the trial court improperly provided the jury with the plaintiff's non-I.P.I. instruction regarding professional negligence. According to defendants, the instruction was internally inconsistent, misleading and confusing to jurors.

The trial judge in this case refused plaintiff's request to provide the 2006 version of I.P.I. 105.1 because he didn't think it "state[d] the law accurately." Specifically, he believed that it misled jurors into believing that they could use their own experiences in assessing the standard of care. He concluded that the 2005 version of I.P.I. 105.1 was more appropriate and should be used in combination with the 2006 version of the instruction

7

because the 2005 version had been approved by the Supreme Court and accurately stated that the jury could determine the standard of care only by relying on expert testimony. The instruction the trial court approved was a hybrid of the 2005 and 2006 versions of I.P.I. 105.1, along with the addition of one portion of a sentence telling jurors to determine the standard of care "after basing your decision on the evidence presented through expert witnesses presented at trial."

Based on our review of the instruction given, we disagree with defendants' assertion that it is misleading, confusing or inconsistent. It clearly and accurately instructs the jury to determine the standard of care based on expert testimony. This is a correct statement of the law. See Pantaleo v. Our Lady of Resurrection Medical Center, 297 Ill. App. 3d 266, 281, 696 N.E.2d 717, 727 (1998) (jury determines standard of care from expert testimony). Because the instruction accurately and fairly states the law, defendants cannot establish that the instruction prejudiced them, requiring a new trial. See Dahan, 295 Ill. App. 3d at 777, 692 N.E.2d at 1308.

B. Proximate Cause Instruction

Defendants contend that they are entitled to a new trial because the trial court improperly instructed the jury regarding proximate cause. According to defendants, the trial court should have provided jurors with the short form of I.P.I. 15.01 because the only alleged cause of plaintiff's injury was defendants' negligence.

The long form of I.P.I. 15.01 is proper where there is evidence that something or the acts of someone other than the

8

defendant was a proximate cause of the injury. See Dahan v. UHS of Bethesda, Inc., 295 Ill. App. 3d 770, 692 N.E.2d 1303 (1998); Heitz v. Hogan, 134 Ill. App. 3d 352, 480 N.E.2d 185 (1985); St. Clair v. Douvas, 21 Ill. App. 2d 444, 158 N.E.2d 642 (1959). In Chambers v. Rush-Presbyterian-St. Luke's Medical Center, 155 Ill. App. 3d 458, 467, 508 N.E.2d 426, 432 (1987), the court found that it was proper for the trial court to use the long form instruction where the defendants argued that something other than their negligence (i.e., cancer) caused the plaintiff's death.

Even if there is no evidence that something or someone other than defendants may have contributed to a plaintiff's injury, courts are reluctant to find that the long form of the instruction prejudiced a party. See, e.g., Drake v. Harrison, 151 Ill. App. 3d 1082, 503 N.E.2d 1072 (1987); Shiner v. Friedman, 161 Ill. App. 3d 73, 513 N.E.2d 1295 (1987). According to the Comments to I.P.I. 15.01, "it will rarely be error to give the long form of the instruction."

Here, defendants claimed that something other than their negligence (i.e., the seroma) contributed to plaintiff's injuries. Thus, it was proper for the trial court to use the long form of I.P.I. 15.01. See Chambers, 155 Ill. App. 3d at 467, 508 N.E.2d at 432. Additionally, the trial court's use of the long form was not an abuse of discretion because it did not prejudice defendants. See Drake, 252 Ill. App. 3d 1082, 503 N.E.2d 1072; Shiner, 161 Ill. App. 3d 73, 513 N.E.2d 1295; I.P.I. 15.01 Comments.

## II. SUFFICIENCY OF THE EVIDENCE

A judgment notwithstanding the verdict (JNOV) is a question of law that appellate courts review de novo. Bergman v. Kelsey, ___

9

Ill. App. 3d ___, 873 N.E.2d 486, 497 (2007). The standard for obtaining a JNOV is very difficult to meet. Bergman, ___ Ill. App. 3d ___, 873 N.E.2d at 497. A JNOV is properly entered only if all the evidence, when viewed in a light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. Barth v. State Farm Fire and Casualty Co., 371 Ill. App. 3d 498, 507, 867 N.E.2d 1109, 1118 (2007). In ruling on a motion for JNOV, a court does not weigh the evidence or make credibility determinations. Barth, 371 Ill. App. 3d at 507, 867 N.E.2d at 1118. A JNOV should not be granted if reasonable minds could differ as to inferences or conclusions to be drawn from the evidence presented. Barth, 371 Ill. App. 3d at 508, 867 N.E.2d at 1118.

A request for a new trial will be granted only if the jury's verdict is against the manifest weight of the evidence. See Bachman v. General Motors Corp., 332 Ill. App. 3d 760, 803, 776 N.E.2d 262, 300 (2002). A verdict is against the manifest weight of the evidence only if it is unreasonable, arbitrary and not based on evidence, or when the opposite conclusion is clearly apparent. Bachman, 332 Ill. App. 3d at 803, 776 N.E.2d at 300. It is the province of the jury to resolve conflicts in the evidence, to pass on the credibility of witnesses, and to decide what weight to give to the witnesses' testimony. Maple v. Gustafson, 151 Ill. 2d 445, 452, 603 N.E.2d 508, 511-12 (1992).

A. Count I

Defendants contend that they are entitled to a JNOV with respect to Count I because it was not reasonably foreseeable that RSD or lymphedema would result from plaintiff's surgery.

10

Defendants also assert that the jury's verdict was against the manifest weight of the evidence because the evidence fails to prove that defendants breached the standard of care.

The proximate cause of an injury is ordinarily a question of fact, to be determined by the jury from a consideration of all the evidence and attending circumstances. Hooper v. County of Cook, 366 Ill. App. 3d 1, 7, 851 N.E.2d 663, 669 (2006); Casey v. Burns, 7 Ill. App. 2d 316, 326, 129 N.E.2d 440, 445 (1955). The two requirements for a showing of proximate cause are cause in fact and legal cause. Hooper, 366 Ill. App. 3d at 7, 851 N.E.2d at 669. Legal cause is established if an injury was foreseeable as the type of harm that a reasonable person would expect to see as a likely result of his or her conduct. Hooper, 366 Ill. App. 3d at 7, 851 N.E.2d at 669. Legal cause is not established where the causal connection is contingent, speculative or merely possible. See Mengelson v. Ingalls Health Ventures, 323 Ill. App. 3d 69, 75, 751 N.E.2d 91, 96 (2001) (plaintiff failed to prove proximate cause where testimony showed the possibility of contracting RSD from defendant's breach of the standard of care was 1 in 6 million).

Here, there was testimony that Dr. Marvin breached the standard of care in several regards, including taking more tissue than was necessary during plaintiff's surgery. Dr. Greenberg and Dr. Drew testified that taking too much tissue from the axilla could cause major complications, including lymphedema and RSD. Even Dr. Marvin admitted that improperly performing the surgery could result in lymphedema twenty to thirty percent of the time. Based on the testimony presented, the jury had sufficient evidence from which to conclude that Dr. Marvin breached the standard of

11

care and that her breach proximately caused plaintiff's injury.

## B.  Count II

Defendants argue that the jury's verdict on Count II is against the manifest weight of the evidence because lymphedema and RSD were unforeseeable risks of the surgery.  Additionally, they argue that plaintiff failed to provide sufficient evidence that she would have refused the procedure if she had been warned of the risks.

A physician has a duty to inform patients of the foreseeable risks and results of a given surgical procedure, and the reasonable alternatives to such procedure. Guebard v. Jabaay, 117 Ill. App. 3d 1, 6, 452 N.E.2d 751, 755 (1983).  The failure of the physician to conform to the professional standard of disclosure must be proved by expert medical evidence, and failure to disclose must proximately cause plaintiff's injury.  Guebard, 117 Ill. App. 3d at 6, 452 N.E.2d at 755.

No expert testimony is necessary to establish proximate causation in an informed consent case.  See Coryell v. Smith, 274 Ill. App. 3d 543, 546, 653 N.E.2d 1317, 1319 (1995).  Proximate causation is determined by an objective standard, what a prudent person in plaintiff's position would have decided if adequately informed.  Guebard, 117 Ill. App. 3d at 10, 452 N.E.2d at 757. Whether a failure to disclose would have changed plaintiff's decision to have the surgery is a question for the jury.  See Coryell, 274 Ill. App.3d at 550, 653 N.E.2d at 1322 (because the issue of proximate causation in an informed consult case relates to what a person of ordinary prudence would do under the circumstances, members of the jury can determine whether a prudent

12

person would have proceeded with the proposed treatment).  If disclosure would have caused a reasonable person in the position of the patient to refuse the surgery, a causal connection is shown. Guebard, 117 Ill. App. 3d at 10, 452 N.E.2d at 757.

Here, there was expert testimony from Dr. Drew that Dr. Marvin did not properly disclose to plaintiff all of the risks of the procedure, including lymphedema and RSD.  According to Dr. Drew, a reasonable medical professional in Dr. Marvin's circumstances would have done so.  Thus, plaintiff properly established that the risks of lymphedema and RSD were not unforeseeable and should have been disclosed to plaintiff prior to her surgery.

Although there was no expert testimony that plaintiff would not have undergone the surgery had she been properly informed of the risks, no expert testimony on that issue was necessary.[1]  See Coryell,  274 Ill. App. 3d at 546, 653 N.E.2d at 1319.  Rather, it was for the jury to determine, based on an objective standard, if a person in plaintiff's position would have decided to undergo the surgery had she been fully advised of all of the risks and alternatives. See Guebard, 117 Ill. App. 3d at 10, 452 N.E.2d at 757.

In this case, Dr. Marvin testified that she did not suspect that the growth in plaintiff's armpit was cancerous based on the

---

[1] Defendants assert that plaintiff was required to provide "objective evidence" that she would not have consented to the procedure had she been adequately informed of the risks, citing Zalazar v. Vercimak, 261 Ill. App. 3d 250, 633 N.E.2d 1223 (1993) and Lowney v. Arciom, 232 Ill. App. 3d 715, 597 N.E.2d 817 (1992).  To the extent that those cases can be interpreted to require expert testimony that a reasonable person in the plaintiff's position would have refused the procedure had she been informed of all the risks, we hereby reject them.

13

negative ultrasound and mammogram. Nevertheless, Dr. Marvin recommended surgically removing the mass without explaining to plaintiff the risks of surgery, including lymphedema and RSD. Based on this evidence, the jury could have reasonably concluded that plaintiff would not have chosen to have the mass surgically removed had she been adequately informed of the risks.

### C. Lost Earnings

Defendants argue that the jury's award of $1 million in lost earnings to plaintiff was against the manifest weight of the evidence because plaintiff did not establish that she could not work as a result of her injury.

Generally, the measure of damages for impairment of earning capacity is the difference between the amount which the plaintiff was capable of earning before her injury and that which she is capable of earning after the injury. Patel v. Brown Machine Co., 264 Ill. App. 3d 1039, 1061, 637 N.E.2d 491, 505 (1994). A plaintiff may testify that her injuries diminished her capacity to work, and the general rule is that the appearance of the plaintiff on the witness standard, her testimony as to the nature of her injuries and their duration is sufficient to take the question of impaired earning capacity to the jury. Patel, 264 Ill. App. 3d at 1061, 637 N.E.2d at 505. A jury may award future lost wages if the record reflects that plaintiff sustained a permanent injury that prevents her from being employed. Mikus v. Norfolk and Western Ry. Co., 312 Ill. App. 3d 11, 726 N.E.2d 95 (2000).

Here, Dr. Greenberg testified that plaintiff will be totally disabled as a result of the injuries she sustained from the surgery Dr. Marvin performed. Plaintiff testified that she was unable to

14

return to her previous employment as a result of the surgery and was unable to obtain new employment since the surgery. She also testified that her pain and pain medication make her unable to work. No one refuted that evidence. Based on the evidence presented, the jury's award of lost earnings was not against the manifest weight of the evidence.

## III. CONCLUSION

The order of the circuit court of Will County is affirmed.

Affirmed.
CARTER and MCDADE, JJ., concurring.

15