FIFTH DIVISION

No. 1-06-2276

GLORIA MATARESE,                                    )    Appeal from the
                                                   )    Circuit Court of
   Plaintiff-Appellant,             )    Cook County
                                                   )
  v.                                     )
                                                   )
JONATHAN BUKA,                                     )    Honorable
                                                   )    Deborah Mary Dooling,
   Defendant-Appellee.              )    Judge Presiding.


JUSTICE O'MARA FROSSARD delivered the opinion of the court:

After a jury trial, defendant Jonathan Buka, M.D., an ophthalmologist, was found not liable in plaintiff Gloria Matarese's medical malpractice claim. On appeal, plaintiff contends: (1) she is entitled to a new trial based on an erroneous jury instruction concerning professional negligence; and (2) the trial court erred in prohibiting her testimony about events after a certain visit to defendant. For the reasons that follow, we affirm the judgment of the circuit court.

BACKGROUND

Plaintiff filed a complaint seeking monetary damages for injuries sustained following cataract surgery in December 2000. Specifically, plaintiff alleged that a posterior capsular tear developed during her surgery and she was injured due to defendant's negligent postoperative care.

Trial commenced in December 2005. During the conference on jury instructions, the parties disagreed about the instruction explaining professional negligence to the jury. Plaintiff submitted instruction No. 14, which was based on what is now Illinois Pattern Jury Instructions, Civil, No. 105.01 (2006) (hereinafter IPI Civil (2006) No. 105.01). Plaintiff's No. 14 provided:

" 'Professional negligence' by an ophthalmologist is the failure to do something that a reasonably careful ophthalmologist would do, or the doing of something that a reasonably careful ophthalmologist would not do, under circumstances similar to those shown by the evidence.

The phrase 'violation of the standard of care' means the same thing as 'professional negligence.'

To determine what the standard of care required in this case, you must rely upon opinion testimony from qualified witnesses. You must not attempt to determine this question from any personal knowledge you have. The law does not say how a reasonably careful ophthalmologist would act under these circumstances. That is for you to decide."

Defendant objected and submitted instruction No. 12, which was based on IPI Civil No. 105.02 (2005) (hereinafter IPI Civil (2005) No. 105.02). Defendant argued that plaintiff's proposed instruction No. 14 and IPI Civil (2006) No. 105.01 upon which it was based misstated the law, created confusion and would cause the jury to try to ignore the evidence from the experts and rely on their own personal views about what constitutes negligence. Defendant also argued that the court was not bound by IPI Civil (2006) No. 105.01 because it had not been reviewed by

a court of review yet.

The trial judge refused plaintiff's No. 14, finding that it did not accurately state the law. Over plaintiff's objection, the trial court gave the jury defendant's No. 12, which stated:

"An ophthalmologist who holds himself out as a specialist and provides service in his specialty must possess and apply the knowledge and use the skill and care ordinarily used by a reasonably well-qualified specialist under circumstances similar to those shown by the evidence. A failure to do so is professional negligence.

The only way in which you may decide whether a defendant possessed and applied the knowledge and used the skill and care which the law required of him is from expert testimony presented in the trial. You must not attempt to determine this question from any personal knowledge you have."

The jury returned a verdict against plaintiff and in favor of defendant, and plaintiff filed a posttrial motion for judgment notwithstanding the verdict, to vacate the judgment entered on the jury's verdict, or for a new trial on all issues. Plaintiff argued, *inter alia*, that the trial court's professional negligence instruction to the jury was manifestly erroneous and constituted reversible error.

The trial court denied plaintiff's posttrial motion. The trial court explained that it rejected plaintiff's proposed instruction, which was based on IPI Civil (2006) No. 105.01, because it was confusing, failed to accurately state the law, and could cause the jury to consider nonexpert testimony when deciding whether defendant violated the standard of care. Specifically, in the

third paragraph of IPI Civil (2006) No. 105.01, jurors are told not to determine the standard of care from any personal knowledge they may have, but then in the next two sentences jurors are told that the "law does not say how a reasonably careful [professional] would act under these circumstances. That is for you to decide." IPI Civil (2006) No. 105.01. The trial court also stated that IPI Civil (2006) No. 105.01 failed to inform jurors that "[t]estimony that Defendant must possess and apply the knowledge and use the skill and care of a reasonably well-qualified specialist is required from Plaintiff's expert witnesses in order for Plaintiff to meet her burden of proof."

Plaintiff appealed.

ANALYSIS

1. Jury Instruction for Professional Negligence

Plaintiff's first claim on appeal is that the trial court committed reversible error by refusing to use IPI Civil (2006) No. 105.01 to instruct the jury on professional negligence.

The determination to provide a particular jury instruction is within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion. York v. Rush-Presbyterian-St. Luke's Medical Center, 222 Ill. 2d 147, 203 (2006). Specifically, the trial court has the discretion to determine if a particular jury instruction is applicable, supported by evidence in the record, and an accurate statement of the law. Lewis v. Haavig, 337 Ill. App. 3d 1081, 1085-86 (2003). "The standard for deciding whether a trial court abused its discretion is whether, taken as a whole, the instructions fairly, fully, and comprehensively apprised the jury of the relevant legal principles." Schultz v. Northeast Illinois Regional Commuter R.R. Corp., 201

4

1-06-2276

Ill. 2d 260, 273 (2002). On appeal, a trial court will not be reversed "for giving faulty instructions unless they clearly misled the jury and resulted in prejudice to the appellant." Schultz, 201 Ill. 2d at 274.

> "Once a trial court determines an instruction is to be given, then Supreme Court Rule 239(a) (177 Ill. 2d R. 239(a)) creates a presumption that the Illinois Pattern Instructions (IPI) are to be used. [Citation.] Rule 239(a) requires a trial court to use the IPI when it contains an instruction applicable in a civil case and the court determines that the jury should be instructed on the subject, unless the court determines that the IPI does not accurately state the law. [Citations.]" Luye v. Schopper, 348 Ill. App. 3d 767, 773 (2004).

While Supreme Court Rule 239(a) prescribes the use of the IPI, those instructions are not exempt from challenge. Powers v. Illinois Central Gulf R.R. Co., 91 Ill. 2d 375, 385 (1982). The propriety of a trial court's instruction "is not conclusively determined by the recommendation and comments of the supreme court's jury instruction committee." Lange v. Freund, 367 Ill. App. 3d 641, 645 (2006). Our supreme court does not give the IPI advance approval prior to or upon publication; "[a]n instruction is approved or rejected only after it has been judicially questioned and considered." Powers, 91 Ill. 2d at 385.

Plaintiff argues that the trial court's instruction, which was based on IPI Civil (2005) Nos. 105.01 and 105.02, erroneously focused the jury's attention on defendant's qualifications instead of his conduct in the particular case. Specifically, IPI Civil (2005) Nos. 105.01 and 105.02 instruct a jury to consider what a *reasonably well-qualified* professional should have done,

5

whereas IPI Civil (2006) No. 105.01 instructs the jury to consider what a *reasonably careful* professional should have done. Plaintiff argues that under IPI Civil (2005) Nos. 105.01 and 105.02, a jury that heard voluminous testimony about a defendant's professional education, experience and employment history could determine that the defendant was reasonably well qualified despite factual evidence that the defendant's conduct, under the facts of the case, constituted actionable negligence.

Plaintiff's argument lacks merit. The trial court instructed the jury that defendant must possess and *apply* the knowledge and *use* the skill and care ordinarily *used* by a reasonably well-qualified specialist. Thus, the jury was told to consider both defendant's qualifications and conduct.

The question remains, however, whether IPI Civil (2006) No. 105.01 is an accurate and clear statement of Illinois law. At the time of this case's disposition in the trial court, no Illinois court of review specifically had approved or disapproved of IPI Civil (2006) No. 105.01. Because this is a pure question of law, we review this issue *de novo*. Luye, 348 Ill. App. 3d at 773.

According to the committee comment, IPI Civil (2006) No. 105.01 was updated and intended to replace IPI Civil (2005) Nos. 105.01 and 105.02. IPI Civil (2006) No. 105.01, Comment, at 279. The rewrite was intended to make the instruction simpler and more understandable to a jury. IPI Civil (2006) No. 105.01 deleted from the definition the phrase explaining that a professional "must possess and apply the knowledge and use the skill and care ordinarily used by a reasonably well-qualified" professional. Whereas the 2005 instruction

defined *standard of care* in terms of a *reasonably well-qualified* professional, IPI Civil (2006) No. 105.01 used the language *reasonably careful*. That "subtle" change was made to conform to cases such as Jones v. Chicago HMO Ltd. of Illinois, 191 Ill. 2d 278, 291 (2000), Advincula v. United Blood Services, 176 Ill. 2d 1, 28 (1996), and Bryant v. LaGrange Memorial Hospital, 345 Ill. App. 3d 565, 575 (2003). IPI Civil (2006) No. 105.01, Comment, at 279.

IPI Civil (2006) No. 105.01 also added the instruction that the law does not say how a reasonably careful professional would act under the circumstances of the case–that is for the jury to decide. No comment or notes on use in the 2006 edition explained that change.

We examine the cases cited by the instruction to determine whether IPI Civil (2006) No. 105.01 is an accurate statement of Illinois law.

In Advincula, 176 Ill. 2d at 6, the administrator of the estate of a patient who died after contracting AIDS through a blood transfusion sued the defendant blood bank, alleging defendant was negligent in collecting blood contaminated with HIV. The relevant statute imposed a legal duty on blood banks and their staffs to " 'exercise[ ] due care and follow[ ] professional standards of care in providing the service according to the current state of the medical arts.' " (Emphasis omitted.) Advincula, 176 Ill. 2d at 12-13, quoting Ill. Rev. Stat. 1983, ch. 111 ½, par. 5103. The trial court instructed the jury that the defendant had a duty to use "due care for the safety of the plaintiff." Advincula, 176 Ill. 2d at 15. Due care was defined as:

> " 'the care that would be used by reasonably careful blood banks under
>
> circumstances similar to those shown by the evidence at and prior to the time [the
>
> patient] contracted the HIV virus. The law does not say how reasonably careful

blood banks would act under the circumstances. That is for you to decide.' "

Advincula, 176 Ill. 2d at 15.

On appeal, our supreme court addressed whether the statute contemplated a professional standard of care or an ordinary, reasonable standard of care and whether a defendant's satisfaction of the professional standard of care precluded any finding of liability for negligence. Advincula, 176 Ill. 2d at 13.

In comparing the ordinary and the professional standards of care, the court explained that the ordinary careful person is the basic standard of care in negligence matters and is an external and objective standard. Advincula, 176 Ill. 2d at 22. However, in order to be complete, the standard also incorporated a subjective component which considers the physical characteristics of the defendant. Specifically, this subjective component considers "the actor's capacity to meet the risk apparent to him, and the circumstances under which he must act." Advincula, 176 Ill. 2d at 22.

The court explained that the professional standard of care similarly incorporated certain subjective qualities and circumstances. Generally, professionals are required to both exercise reasonable care in what they do and "possess and exercise a standard minimum of special knowledge and ability." Advincula, 176 Ill. 2d at 23. The established standard of care for all professionals in Illinois "is stated as the use of the same degree of knowledge, skill and ability as an ordinarily careful professional would exercise under similar circumstances." Advincula, 176 Ill. 2d at 23. The traditional duty instruction directs the jury that it may not attempt to assess a defendant's conduct from any personal knowledge, because:

"The standard recognizes that lay jurors are not equipped to determine what constitutes reasonable care in professional conduct without measuring the actor's conduct against that of other professionals. [Citations.]

* * *

It remains the case, however, that while professional conduct in Illinois will be measured against a professional standard, all persons, including professionals, both medical and nonmedical, are also obligated, generally, to exercise due care or ordinary care, commensurate with the apparent risk. [Citations.]" Advincula, 176 Ill. 2d at 24-25.

The court concluded that the statute required the blood bank's conduct to be measured against the professional standard of care while the bank remained answerable to the general duty–to which every professional is answerable–to exercise due care. Advincula, 176 Ill. 2d at 34. The court explained that the professional is not subject to both a professional standard of care and a lay reasonableness standard of care. Rather, the professional standard must provide due or reasonable care. Advincula, 176 Ill. 2d at 38. The court warned that this did not mean that the defendant's conduct was to be measured against what a lay jury considers as reasonable. Rather, it meant that the professional standard of care can be shown to be sufficient or deficient in providing due care by means of expert testimony or other relevant proofs. Advincula, 176 Ill. 2d at 38. Thus, the court rejected the defendant's argument that following the professional standard of care fulfills the general duty to exercise due care. Advincula, 176 Ill. 2d at 37. Although evidence that a defendant's conduct conformed with local usage or general custom is

1-06-2276

indicative of due care, it is not conclusive of it. Advincula, 176 Ill. 2d at 38. A retrial was necessary because the trial court's instruction allowed the jury to decide the reasonableness of the defendant's conduct based on the jury's own knowledge and to disregard the expert opinion testimony and evidence that measured the defendant's conduct against similar entities. Advincula, 176 Ill. 2d at 40.

In Jones, 191 Ill. 2d at 292-99, the court decided, in the context of a summary judgment motion, that a health maintenance organization may be held liable for institutional negligence, which is assessed under a reasonableness standard of care. Jones did not involve the legal propriety of jury instructions or an individual medical provider's professional negligence. Concerning the concepts of *duty* and *standard of care*, the court cited Dean Prosser's explanation:

" ' "[D]uty" is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in light of the apparent risk. *What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty.* The distinction is one of convenience only, and it must be remembered that the two are correlative, and one cannot exist without the other.' " (Emphasis in original.) Jones, 191 Ill. 2d at 294-95, quoting W. Prosser, Torts §53, at 324 (4th ed. 1971).

Jones then discussed the professional standard of care and cited the definition, or standard minimum, found in Advincula that "professionals are expected to use the same degree of knowledge, skill and ability as an ordinarily careful professional could exercise under similar

10

circumstances." Jones, 191 Ill. 2d at 295. The court then stated that the plaintiff bore the burden of establishing the standard of care through proper evidentiary sources, but the jury determines what constitutes the standard of care required of the defendant under the circumstances of the case. Jones, 191 Ill. 2d at 299.

In Bryant, 345 Ill. App. 3d at 575, the defendant hospital was sued under a theory of vicarious liability for the individual conduct and malpractice of its nurses. Thus, the case involved claims of professional negligence, and the standard of care required the defendant medical professional to act as an ordinarily careful professional would act, *i.e.*, "to use the same degree of knowledge, skill and ability as an ordinarily careful professional would exercise in similar circumstances." Bryant, 345 Ill. App. 3d at 575. The plaintiff claimed that IPI Civil (2000) No. 105.01 improperly compelled the jury to *only* consider expert testimony in reaching a verdict and argued that the jury might disregard the testimony of the defendant doctor and nurses. The court, however, rejected that argument, citing Regala v. Rush North Shore Medical Center, 323 Ill. App. 3d 579, 586 (2001), for the proposition that IPI Civil (2000) No. 105.01 properly stated the law where it instructed the jury that it *must utilize* the expert medical testimony to determine the standard of care and deviations therefrom. Bryant, 345 Ill. App. 3d at 577.

Although our supreme court has not addressed the accuracy of IPI Civil (2006) No. 105.01 yet, two districts of the appellate court have addressed it and disagree regarding its accuracy.

In Smith v. Marvin, 377 Ill. App. 3d 562, 567 (2008), the Third District of this court held that the trial court's hybrid professional negligence instruction, which was created from both the

2006 and 2005 versions of IPI Civil No. 105.01, was not misleading, confusing or inaccurate. The trial judge believed that IPI Civil (2006) No. 105.01 misled jurors into believing they could use their own experiences to assess the standard of care. Smith, 377 Ill. App. 3d at 567. Consequently, he gave the following hybrid instruction to the jury:

" ' "Professional negligence" by a general surgeon is the failure to do something that a reasonably well-qualified general surgeon would do, or the doing of something that a reasonably well-qualified surgeon would not do, under the circumstances similar to those shown by the evidence. In providing professional services, a general surgeon must possess and apply the knowledge and use the skill and care ordinarily used by a reasonably well-qualified general surgeon under the circumstances similar to those shown by the evidence. A failure to do so is professional negligence.

The phrase "deviation from the standard of care" means the same thing as "professional negligence."

To determine the standard of care in this case, you must rely upon opinion testimony from expert witnesses. The law does not say how a reasonably well-qualified general surgeon would act under these circumstances. That is for you to decide after basing your decision on the evidence presented through expert witnesses presented at trial. You must not attempt to determine this question from any personal knowledge that you may have.' " Smith, 377 Ill. App. 3d at 566.

1-06-2276

On appeal, the court ruled that the trial court's hybrid instruction was not error but, rather, a correct statement of the law that clearly and accurately instructed the jury to determine the standard of care based on expert testimony. Smith, 377 Ill. App. 3d at 567.

In LaSalle Bank, N.A. v. C/HCA Development Corp., No. 1-06-1859, slip op. at 10-14 (August 4, 2008), a division of the First District of this court considered a trial judge's modification of IPI Civil (2006) No. 105.01 that (1) deleted the phrase *reasonably careful* and replaced it with *reasonably well-qualified*; and (2) deleted the last sentence–*That is for you to decide*–and replaced it with *The only way you can decide this question is to base your decision on the testimony from qualified witnesses*. The appellate court ruled that the phrase *reasonably careful* in IPI Civil (2006) No. 105.01 was an accurate statement of the law and the trial court's failure to use it was error, but plaintiffs suffered no prejudice from its use. LaSalle Bank, N.A., slip op. at 17.

We agree with LaSalle Bank, N.A. that the phrase *reasonably careful* in IPI Civil (2006) No. 105.01 accurately states Illinois law and has replaced the phrase *reasonably well-qualified* from IPI Civil (2005) No. 105.01. That change comports with the law emphasized in Advincula that the professional standard must incorporate reasonable care. Advincula, 176 Ill. 2d at 38. Nevertheless, a trial court's failure to use the term *reasonably careful* is not reversible error because the *reasonably well-qualified* phrase from IPI Civil (2005) No. 105.01 was an accurate statement of the law. LaSalle Bank, N.A., slip op. at 11 (party could not establish prejudice requiring a new trial where the jury was given a modified version of IPI Civil (2006) No. 105.01 that still was an accurate statement of the law); see Smith, 377 Ill. App. 3d at 567-68 (accord).

13

1-06-2276

However, we disagree with <u>LaSalle Bank, N.A.</u> to the extent that it can be interpreted as holding that the entire IPI Civil (2006) No. 105.01 is an accurate statement of the law. See <u>LaSalle Bank, N.A.</u>, slip op. at 19-20 (cautioning trial courts that they run the risk of abusing their discretion "by substantively altering an instruction that is already a correct statement of the law"). We find that certain modifications to IPI Civil (2006) No. 105.01 similar to those made by the trial courts in <u>Smith</u> and <u>LaSalle Bank, N.A.</u> are crucial components of a clear, complete and accurate jury instruction on professional negligence. Specifically, we refer to modifications that (1) explain the standard of care by adding that the professional *must possess and apply the knowledge and use the skill and care ordinarily used by a reasonably careful professional*; and (2) add the instruction that the jurors decide how a reasonably careful professional would act *after basing their decision on the evidence presented through expert witnesses presented at trial*.

<u>Advincula</u> made clear that the professional standard of care "is stated as the use of the same degree of knowledge, skill and ability as an ordinarily careful professional would exercise under similar circumstances." <u>Advincula</u>, 176 Ill. 2d at 23. That language is quoted again in <u>Jones</u>, 191 Ill. 2d at 295, <u>Bryant</u>, 345 Ill. App. 3d at 575, and <u>Loman v. Freeman</u>, 229 Ill. 2d 104, 119 (2008). However, that language, which requires jurors to consider whether the professional possessed and applied the knowledge and used the skill and care ordinarily used by a reasonably careful professional, is missing from IPI Civil (2006) No. 105.01.

Another problem with IPI Civil (2006) No. 105.01 is that it initially tells jurors not to determine the standard of care from their personal knowledge, but then seems to contradict itself by adding that the law does not say how a reasonably careful professional would act under the

14

circumstances and that is for the jurors to decide. This court previously recognized that the combination of those instructions could result in jury confusion. Ellig v. Delnor Community Hospital, 237 Ill. App. 3d 396, 413 (1992) (holding it was error to give IPI Civil 3d No. 10.02, which defined ordinary care, together with IPI Civil 3d No. 105.01, which defined professional negligence); see also IPI Civil (2005) No. 105.01, Notes on Use, at 277 (recommending that in a professional negligence case, IPI Civil (2005) No. 105.01 should be given "in lieu of IPI 10.01," which defined negligence). The current version of IPI Civil (2006) No. 105.01 is confusing because it could lead jurors to mistakenly assume that they are to decide whether the defendant deviated from the professional standard of care in the case based on their personal knowledge.

We recognize that the jurors must be informed that they are to determine what constitutes the standard of care required of the defendant under the circumstances of the case. Jones, 191 Ill. 2d at 299. Jurors must also be informed that evidence that the defendant's conduct conformed to the professional standard of care does not conclusively establish that the defendant fulfilled his general duty to exercise due care. Advincula, 176 Ill. 2d at 27-28. Nevertheless, IPI Civil (2006) No. 105.01 is not clear enough to avoid confusing the jury. Advincula warned that the defendant is not subject to both an ordinary and professional standard of care and the jury must not measure the defendant professional's conduct against what a lay jury considers reasonable under the circumstances. Advincula, 176 Ill. 2d at 29. The last two sentences of IPI Civil (2006) No. 105.01 could mislead jurors into believing they may disregard expert testimony and use their own experiences to assess the standard of care. Modifications to IPI Civil (2006) No. 105.01 like those made by the trial courts in Smith and LaSalle Bank, N.A. are necessary to prevent jury

15

1-06-2276

confusion.

For the reasons previously discussed, we affirm the trial court's decision to modify that instruction to prevent jury confusion.

## 2. Excluded Testimony

Next, plaintiff argues the trial court erred when it prohibited her from testifying about a visit to defendant after her visit on March 20, 2001. The record, however, refutes plaintiff's assertion. Although the trial court initially barred plaintiff from testifying about her visit on March 21, 2001, where defendant allegedly performed a paracentesis, later in the trial the court allowed her to testify about that very issue over defendant's objection.

## CONCLUSION

For the reasons explained above, we affirm the judgment of the circuit court denying plaintiff's posttrial motion for judgment notwithstanding the verdict, to vacate the judgment, and for a new trial.

Affirmed.

FITZGERALD SMITH, P.J., and TOOMIN, J., concur.

16

GLORIA MATARESE,

Plaintiff-Appellant,

v.

JONATHAN BUKA,

Defendant-Appellee.

No. 1-06-2276

Appellate Court of Illinois
First District, FIFTH DIVISION

October 31, 2008

Justice Margaret O'Mara Frossard authored the opinion of the court:

Presiding Justice Fitzgerald Smith and Justice Toomin concur.

Appeal from the Circuit Court of Cook County.
The Hon. Deborah Mary Dooling, Judge Presiding.

**Counsel for Plaintiff-Appellant**
Motherway & Napleton, LLP, Chicago, IL 60603
OF COUNSEL: Kevin J. Golden and Robert J. Napleton

and

Law Offices of Lynn D. Dowd, Naperville, IL 60540
OF COUNSEL: Lynn Dowd and Robert G. Black

**Counsel for Defendant-Appellee**
Cunningham, Meyer & Vedrine, P.C., Wheaton, IL 60187
OF COUNSEL: William F. Cunningham and Robert L. Larsen