195 Ill. App.3d 891 (1990)
552 N.E.2d 1043
In re ESTATE OF JOSEPHINE DEBEVEC, A Disabled Adult (Eugenia Seibold, Petitioner-Appellee,
v.
Eleanor Schulte, Respondent-Appellant).
No. 5-89-0282.
Illinois Appellate Court  Fifth District.
Opinion filed March 8, 1990.
*892 *893 William C. Evers III, of Collinsville, for appellant.
Barbara L. Crowder, of Crowder & Taliana, of Edwardsville, guardian ad litem.
Order affirmed.
JUSTICE GOLDENHERSH delivered the opinion of the court:
Respondent Eleanor Schulte, Madison County public guardian, appeals from an order of the circuit court of Madison County removing her as guardian of the person of Josephine Debevec, a disabled adult, and appointing instead petitioner, Eugenia Seibold. In this cause, respondent raises two issues: (1) whether the trial court erred in removing respondent as guardian of the person of Josephine Debevec, and (2) whether the trial court erred in awarding attorney fees to petitioner. This court affirms.
Josephine Debevec was originally declared a disabled adult in California on July 8, 1988. Josephine had no relatives in California to act as her guardian, so the public guardian was appointed. Josephine was then moved to a nursing home in Illinois, and her conservators in California nominated respondent to act as guardian over both the estate and person of Debevec. On November 9, 1988, the Illinois trial court appointed respondent to be the guardian over the estate and person of Josephine. On February 14, 1989, petitioner herein, a sister of Josephine, petitioned to remove respondent as guardian and sought appointment of herself as guardian of both the estate and person of Josephine. A hearing was held pursuant to her petition.
Mike and Penelope Rousseau both testified that petitioner had been a baby-sitter for their two young children since 1985, and had done an excellent job. Barbara Green, a nurse's aid at the nursing home where Josephine resides, testified that she had seen petitioner visit her sister at the nursing home approximately two to three times per week. Green testified that during these visits petitioner would bring Josephine fruit and new clothing, talk to and walk with Josephine, and generally take good care of her.
Petitioner testified that she is the younger sister of Josephine. She stated that she visits Josephine at least one time per day and *894 sometimes two times per day. She also testified that she did not want compensation should she be appointed guardian and was willing to be guardian only of the person of Josephine and have a bank or another person act as guardian of the estate. Petitioner stated that respondent had not interfered with petitioner visiting her sister, but she insisted that respondent had made her feel that she could not take her sister out of the nursing home to visit other relatives, go on drives, or go out to eat.
Velma Gray and Betty Rushing, also sisters of Josephine, testified that they preferred the public guardian over petitioner. Both specifically questioned petitioner's ability to manage the estate of Josephine. Vernon Fulcher, a brother-in-law to both Josephine and petitioner, testified that he was satisfied with the job respondent had done and wanted respondent to remain as Josephine's guardian. Fulcher stated he did not believe petitioner was qualified to act as guardian for Josephine, but could not give a factual basis for this opinion.
At the trial court's request, another sister, Helen Roberts, testified that she had not been involved in most of the family decisions concerning Josephine, as she had until recently lived in Las Vegas, Nevada. She did think that petitioner would be qualified to act as guardian over Josephine.
Barbara Crowder, the guardian ad litem for Josephine, filed a written report and gave oral testimony. In her report she stated that while the petition in Illinois for guardianship over Josephine gave the names and addresses of Josephine's nearest relatives, no notice was ever sent to the relatives. Her recommendation was that petitioner was qualified to act as guardian. She noted that Josephine herself indicated that she would prefer petitioner over respondent. The report also stated that none of the family members "have any significant complaints against" petitioner, only "vague reservations about [petitioner's] ability to handle the financial aspects." The guardian ad litem found that it would be in the best interests of Josephine for respondent to be removed as guardian and for petitioner to be appointed.
The trial court entered an order finding that while respondent had acted properly at all times, it would be in the "best interests" of Josephine to have respondent removed and petitioner appointed guardian of the person of Josephine Debevec.
Respondent's first issue on appeal is whether the trial court erred in removing her as guardian. Respondent contends that the General Assembly has not adopted a preference for relatives to act *895 as guardians in cases involving disabled adults. Moreover, once a guardian is appointed for a disabled adult, respondent contends that the guardian cannot be removed unless it can be shown that the guardian is unable to perform his or her duties or has been derelict in doing so. Respondent further argues that it is not enough that a relative desires to act as guardian. If it were enough, this could lead to a never-ending stream of petitions to remove guardians. Petitioner responds that removal of a representative does not limit itself to situations where the representative has committed malfeasance. Additionally, petitioner contends that the problem in the instant case arose because she was not notified concerning the appointment of the public guardian for her sister. Had she been notified of the hearing, the issue would not be removal, but initial appointment of a guardian in Illinois. Petitioner argues that she is better qualified to serve as guardian of her sister because she is a relative and is, therefore, more caring and more concerned over Josephine's welfare than the public guardian, who is a stranger. We first address the notice issue.
 1 In the instant case, the nearest relatives were not given notice of the hearing to transfer guardianship from the California conservators to the Illinois public guardian. In an original guardianship proceeding, the General Assembly requires that the nearest living relatives of the alleged disabled adult must be given notice. (Ill. Rev. Stat. 1987, ch. 110 1/2, par. 11a-10(f).) Failure to give notice to such relatives is a jurisdictional defect requiring vacation of the order appointing a guardian. (In re Guardianship of Sodini (1988), 172 Ill. App.3d 1055, 527 N.E.2d 530.) We can find no such notice requirement in cases involving a transferred guardianship and decline to impose such a requirement today. However, we do find that this lack of notice was a contributing factor in the problems faced by these parties. With this in mind, we move to a discussion of the removal issue.
 2 Section 23-2 of the Probate Act of 1975 (the Act) deals with the removal of a guardian and states:
"§ 23-2. Removal. (a) On petition of any interested person or on the court's own motion, the court may remove a representative for any of the following causes. If the representative:
(1) is acting under letters secured by false pretenses;
(2) is adjudged a person subject to involuntary admission under the Mental Health and Developmental Disabilities Code or is adjudged an disabled person;
(3) is convicted of a felony;
(4) wastes or mismanages the estate;

*896 (5) conducts himself in such a manner as to endanger his co-representative or the surety on his bond;
(6) fails to give sufficient bond or security, counter security or a new bond, after being ordered by the court to do so;
(7) fails to file an inventory or accounting after being ordered by the court to do so;
(8) conceals himself so that process cannot be served upon him or notice cannot be given to him;
(9) becomes incapable of or unsuitable for the discharge of his duties; or
(10) there is other good cause." (Ill. Rev. Stat. 1987, ch. 110 1/2, par. 23-2(a).)
It is clear that the first nine factors deal with reasons a person would be unfit to remain as guardian. The tenth reason, "other good cause," recognizes that the first nine may not be exhaustive. The question then becomes what constitutes "other good cause."
 3 Our research and the briefs of counsel indicate that this is a case of first impression as to guardianship of a disabled adult. In other guardianship situations, however, "other good cause" has not been limited to situations in which the representative committed malfeasance. In the case of In re Estate of Wadman (1982), 110 Ill. App.3d 302, 442 N.E.2d 333, involving guardianship of a minor, it was found that "other good cause" referred to in section 23-2(a)(10) of the Act was not limited to those situations where the representative committed malfeasance. The Wadman court found that if this were so, no procedure would exist for returning a child to the custody and control of a parent when that parent had become a fit parent, but the previously appointed guardian had served properly and remained able to do so. (110 Ill. App.3d at 304, 442 N.E.2d at 335.) We therefore find that other good cause can mean something other than malfeasance or misfeasance by the guardian.
 4, 5 The General Assembly has provided that the selection of a guardian is in the discretion of the trial court, which must give due consideration to the preference of the disabled adult. (Ill. Rev. Stat. 1987, ch. 110 1/2, par. 11a-12(d).) In the case of In re Conservatorship of Browne (1977), 54 Ill. App.3d 556, 370 N.E.2d 148, the court found that decisions in appointing a conservator for an incompetent should be interpreted in light of the best interest and well-being of the incompetent. (54 Ill. App.3d at 559, 370 N.E.2d at 151.) The Browne court also found that the recommendations of relatives should be considered by the court because it is presumed that relatives would be more solicitous of an incompetent's welfare than *897 would a nonrelative. (54 Ill. App.3d at 559-60, 370 N.E.2d at 150.) Respondent rightly points out that the Browne case is distinguishable from the instant case because Browne dealt with the initial appointment of a guardian while the instant case deals with removal. While recognizing this difference, we find that the holding in Browne is applicable to the instant case as well.
Josephine herself has stated a preference for petitioner to act as her guardian. Petitioner, a sister of the disabled adult, is quite willing to take on the task of guardian. Petitioner visits with her disabled sister at least once per day. All testimony reflected that petitioner is a loving and caring sister. The only complaints lodged against petitioner were by other family members concerned over petitioner's ability to manage Josephine's estate, which was valued at between $150,000 and $350,000. Petitioner then withdrew her request to be appointed guardian of Josephine's estate. The testimony reflected that petitioner would be an appropriate guardian over the person of Josephine Debevec. The guardian ad litem recommended that respondent be removed as guardian of the person of Josephine and that petitioner be appointed instead. Additionally, we note that notice was never sent to Josephine's relatives on the transfer of guardianship from California to the Madison County public guardian.
 6, 7 The standard of review for removal of an executor under section 23-2 of the Act is whether the decision of the trial court is against the manifest weight of the evidence. (In re Estate of Hubbard (1977), 54 Ill. App.3d 238, 241, 369 N.E.2d 292, 295.) A review of the trial court's findings and the record leads us to conclude that the decision to remove respondent as guardian of the person of Josephine Debevec was not against the manifest weight of the evidence. The record establishes that there was "other good cause" for removal not in any way reflecting upon respondent's performance, and respondent remains guardian of the estate. By removing the public guardian and appointing petitioner, the public guardian will have more time to spend on cases where there is not a relative willing to take on the task of guardian of the person. We in no way imply it is enough that a relative desires to be appointed guardian in order to remove a guardian. If that were so, respondent's argument that this decision would lead to a never-ending stream of removal petitions would be valid. After reviewing the record as a whole, however, we cannot say that the trial court erred in removing respondent and appointing petitioner.
The final question we are asked to address is whether the trial court erred in awarding attorney fees to petitioner. Respondent contends *898 that no benefit was conferred upon the estate of Josephine Debevec by removing respondent as guardian of the person of Josephine and appointing petitioner.
 8 Respondent correctly contends that in order to award attorney fees, the legal services rendered must benefit the estate. (In re Estate of Weber (1980), 80 Ill. App.3d 1044, 1045, 400 N.E.2d 991, 992; In re Estate of Minsky (1978), 59 Ill. App.3d 974, 376 N.E.2d 647.) The findings of a trial court will not be disturbed by a reviewing court if there is any evidence in the record to support such findings. (In re Estate of Freund (1978), 63 Ill. App.3d 1, 4, 379 N.E.2d 935, 937.) After examining the record in this case, we conclude that the award of attorney fees from Josephine's estate to petitioner was proper.
 9, 10 The General Assembly adheres to the policy that family relationships should be safeguarded. (See section 102(2) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 102(2)).) Furthermore, the courts of Illinois presume that a relative would be more solicitous of an incompetent's welfare than would be a nonrelative. (In re Conservatorship of Browne (1977), 54 Ill. App.3d 556, 559-60, 370 N.E.2d 148, 150.) We cannot say that a benefit has not been conferred upon the estate of Josephine by removing the public guardian and substituting her sister, as public policy clearly prefers a relative to act in such situations. We do not believe that the trial court's allowance of attorney fees was manifestly erroneous under the circumstances of this case. Estate of Weber (1980), 80 Ill. App.3d at 1045, 400 N.E.2d at 992.
For the foregoing reasons, the order of the circuit court of Madison County is affirmed.
Affirmed.
HARRISON and HOWERTON, JJ., concur.