_____No. 3–08–0294

_____

Filed February 4, 2009

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2009

| | | |
|---|---|---|
| In re ESTATE OF | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| KATHLEEN SAVIO, Deceased. | ) | Will County, Illinois |
| | ) | |
| | ) | No. 04-P-188 |
| | ) | |
| | ) | Honorable |
| | ) | Carmen Goodman, |
| | ) | Judge, Presiding. |

_____

JUSTICE CARTER delivered the opinion of the court:

_____

The father and four of the siblings of the above decedent filed a petition to reopen her estate, to remove the prior executor, and to appoint the father and one of the siblings as coexecutors of the reopened estate. After a hearing on the matter, the trial court granted the petition. The former executor of the estate and the decedent's ex-husband, who is also the guardian and father of decedent's two minor children, appeal the trial court's ruling, arguing that the trial court erred in: (1) reopening the estate, and (2) removing and replacing the former executor. We affirm.

FACTS

On March 1, 2004, 40-year-old Kathleen Savio was found dead in the bathtub of her home. An autopsy revealed that she had drowned. The death was classified in the initial autopsy report as accidental.

Savio was survived by her two minor children, K.P. and T.P, and by her ex-husband, Drew Peterson. Peterson is the natural father of the two minor children and also the children's guardian. Savio and Peterson were divorced in October or November of 2003 in a bifurcated proceeding. Although the bonds of marriage had been legally dissolved, the division of property between Savio and Peterson had been reserved and was still pending at the time of Savio's death. At the initial coroner's inquest, Savio's sister testified that she believed that Peterson was responsible for Savio's death and that Savio was scared that something might happen to her because of the upcoming property division hearing in the divorce case.

Initially, it was believed that Savio had died without leaving a will. The public guardian, Richard Kavanagh, was appointed as the independent administrator of Savio's estate. At some point later, however, a will was produced. The handwritten will, dated March 2, 1997, made a joint disposition of decedent's and Peterson's property. In the will, decedent and Peterson each provided that all of their property would pass to the other upon either of their deaths. The will provided further that if decedent and Peterson passed away at or about the same time, all of the property was to be divided equally between K.P. and T.P. and between Peterson's two adult children (S.P. and E.P.) from a previous marriage. Set forth in the will was a specific list of some of the property of Savio and Peterson, including certain life insurance policies, a pension, certain real estate, and a certain business interest. The will also provided that James Carrol was to serve as the executor of the estate.

In September of 2004, Peterson filed a petition to have James Carrol appointed as executor. Carrol followed up that request with a petition of his own. In March of 2005, an order was entered admitting Savio's will to probate, discharging Kavanagh as the independent administrator, and

appointing Carrol as the independent executor of the estate.

Kavanagh later filed a final report of his activities as independent administrator. Of relevance to this appeal, Kavanagh's report stated that: (1) the home where Savio lived, which belonged to both Savio and Peterson, was sold pursuant to a court order; (2) the net proceeds of the home sale, approximately $287,000, were placed in an escrow account pending a final order in the divorce case; (3) upon being appointed executor of the estate, Carrol fired Savio's divorce attorney, appeared for the estate in the divorce case pro se, and essentially agreed to turn over all of the marital property to Peterson individually, including the entire interest in the business and all of the net proceeds of the home sale; and (4) in Kavanagh's opinion, Carrol's actions were not in the best interest of the estate or its beneficiaries and served to transfer anywhere from approximately $144,000 to $288,000 away from the beneficiaries to Peterson. A copy of the property division order was attached to Kavanagh's report. In addition to the above, the property division order indicated that: (1) a trust fund in excess of $1 million (primarily from Savio's life insurance policy) had been set up at a bank for the benefit of K.P. and T.P. to provide for the children's future medical, educational, and other necessary expenses; (2) Peterson assumed all of the marital debts including about $10,000 in debts that were debts of the estate; and (3) all personal property that was in Peterson's possession was awarded to him free and clear from any claims of the estate. Kavanagh's final report was approved by the trial court in February of 2006, and Kavanagh was discharged as independent administrator of Savio's estate.

In May of 2006, Carrol filed an inventory and final report of his activities as executor of the estate. The inventory reported that the only assets of the estate were certain items of tangible personal property, having little cash value, which were turned over to Peterson. The final report

indicated that the administration of the estate had been completed; that each claim of the estate had been allowed, disallowed, compromised, dismissed or was barred; that the assets of the estate were insufficient to pay all of the claims in full; and that any claims that were allowed were paid according to their respective priorities. The docket sheet indicates that Carrol's inventory and final report were approved by the trial court, Carrol was discharged as independent executor, and the estate was closed.

In March of 2008, Savio's father and siblings filed a joint petition to reopen Savio's estate, to remove Carrol as executor, and to appoint the father and one of the siblings as the successor coexecutors of the reopened estate. In the joint petition, Savio's father and siblings alleged that: (1) Savio's body had been exhumed; (2) additional autopsies had been conducted on the body in November of 2007; (3) the additional autopsies concluded that Savio's death was probably a homicide and not accidental; (4) a wrongful death cause of action against Peterson was a newly discovered asset or an unsettled portion of the estate; (5) Carrol was Peterson's uncle, and as such, was in a direct conflict of interest as to the proposed wrongful death action; (6) Carrol may have committed waste or mismanagement of the estate by allowing everything to pass to Peterson in the divorce proceeding and by failing to file an adequate inventory regarding the estate; (7) Carrol was incapable of suitably discharging his duties as administrator; (8) Carrol had breached his duty of undivided loyalty to the estate and its beneficiaries, which would constitute good cause for removal of Carrol as executor; (9) Savio's will made no appointment of a successor executor in the event that Carrol was removed; and (10) Savio's father and sibling had a statutory preference (755 ILCS 5/9–3 (West 2006)) to serve as successor coexecutors of the estate. In their prayer for relief, Savio's father and siblings sought to have the estate reopened, to have a citation issued pursuant to statute against

4

Carrol to show cause why he should not be removed as executor of the estate, and to have letters issued to Savio's father and one of the siblings as successor coexecutors of the reopened estate.

A hearing was held on the petition in April of 2008. During the hearing, no evidence was presented, only arguments. After hearing the arguments of the attorneys, the trial court granted the petition and entered an order reopening the estate, removing Carrol as executor, and appointing Savio's father and sibling as successor coexecutors of the reopened estate. This appeal followed.

ANALYSIS

On appeal, Peterson and Carrol argue first that there is no proper legal ground to justify reopening Savio's estate and that the trial court erred, therefore, in granting the petition to reopen. More specifically, Peterson and Carol contend that under Illinois law, a decedent's estate may only be reopened if there is a newly discovered asset or an unsettled portion of the estate and that neither of those two legal grounds for reopening an estate is present in the instant case. Focusing their argument primarily on the first legal ground, Peterson and Carrol assert that a possible wrongful death claim is: (1) not an asset of the estate; and (2) not newly discovered, since Savio's family had been accusing Peterson of causing the death since as early as the initial coroner's inquest.

Savio's father and siblings argue that the trial court properly granted the petition to reopen the estate. Savio's father and siblings assert that a possible wrongful death claim is a newly discovered asset that would provide sufficient legal grounds for reopening Savio's estate. In making that assertion, Savio's father and siblings point out that despite the family's suspicions, the possibility of a wrongful death claim did not truly arise until after the estate had been closed and the additional autopsies had determined that Savio's death was probably a homicide. Savio's father and

5

siblings note that regardless of whether the claim belongs to the estate or to the beneficiaries, it still must be brought by the personal representative of the decedent. See 740 ILCS 180/2 (West 2006).

Initially, we must determine the appropriate standard of review to be applied to this issue. Peterson and Carrol argue that a de novo standard of review should be applied because this issue involves a question of statutory interpretation (see In re Estate of Poole, 207 Ill. 2d 393, 401, 799 N.E.2d 250, 255 (2003) (the supreme court applied a de novo standard of review to a question involving statutory interpretation in determining who had legal preference to act as the administrator of a particular estate)) and because the trial court's ruling was not the result of an evidentiary hearing. Savio's father and siblings, on the other hand, argue that a manifest weight of the evidence standard is appropriate and cite general case law regarding the removal of an executor to support that conclusion. See In re Estate of Debevec, 195 Ill. App. 3d 891, 897, 552 N.E.2d 1043, 1047 (1990) (the appellate court applied a manifest weight of the evidence standard in determining whether a guardian of the person of a disabled adult was properly removed). Although we have reviewed the case law in this area, we have found no clear statement of the standard of review that should be applied to a trial court's decision on a petition to reopen a decedent's estate. We note, however, that contrary to the argument of Peterson and Carrol, the issue before this court in the present case does not involve an interpretation of the probate law in Illinois. Rather, the issue involves the application of that law to the facts of the present case and a factual determination of whether the possible wrongful death claim is a newly discovered asset. See In re Estate of Moskal, 50 Ill. App. 3d 291, 293, 365 N.E.2d 592, 594 (1977) (the appellate court found that based upon the facts of the case, the trial court's ruling that certain personal property was not a newly discovered asset was not erroneous). Therefore, we will apply a manifest weight of the evidence standard of review to this issue and will not reverse the trial court's decision on this issue unless it is against the manifest

6

weight of the evidence. A trial court's ruling is against the manifest weight of the evidence only if it is unreasonable, arbitrary and not based on evidence, or when the opposite conclusion is clearly evident from the record. Smith v. Marvin, 377 Ill. App. 3d 562, 569, 880 N.E.2d 1023, 1030 (2007).

Turning to the substantive arguments of the parties on this issue, section 24–9 of the Probate Act of 1975 (the Act) provides in pertinent part as follows:

> "If a decedent's estate has been closed and the representative discharged, it may be reopened to permit the administration of a newly discovered asset or of an unsettled portion of the estate on the petition of any interested person." 755 ILCS 5/24–9 (West 2006).

Thus, section 24-9 establishes two limited circumstances when a decedent's estate may be reopened: when there is a newly discovered asset or when there is an unsettled portion of the estate. 755 ILCS 5/24–9 (West 2006).

To determine if the claim in the present case is a newly discovered asset, we must consider wrongful death law in Illinois. Section 1 of the Wrongful Death Act creates an independent cause of action for the death of an individual caused by the wrongful act, neglect, or default of another. 740 ILCS 180/1 (West 2006); Pasquale v. Speed Products Engineering, 166 Ill. 2d 337, 360, 654 N.E.2d 1365, 1378 (1995); Kessinger v. Grefco, Inc., 251 Ill. App. 3d 980, 982, 623 N.E.2d 946, 948 (1993). The purpose of a wrongful death action is to compensate the surviving spouse and the next of kin for the pecuniary losses resulting from the decedent's death. Pasquale, 166 Ill. 2d at 360, 654 N.E.2d at 1378; Kessinger, 251 Ill. App. 3d at 982-83, 623 N.E.2d at 948. To avoid multiple lawsuits, a wrongful death action may only be brought by the personal representative of the decedent. 740 ILCS 180/2 (West 2006); Pasquale, 166 Ill. 2d at 361, 654 N.E.2d at 1378. "Although the action is to be brought under the [Wrongful Death] Act by and in the name of the personal representative

7

of the deceased person, the legislative intent of the [Wrongful Death] Act is that the claims brought are those of the individual beneficiaries." Kessinger, 251 Ill. App. 3d at 983, 623 N.E.2d at 948.

The facts on this matter in the present case are not in dispute. It is clear from record that during the period that the estate was initially open after Savio's death, the only autopsy done on Savio's body had classified the death as accidental. However, after the estate was closed, additional autopsies conducted in November of 2007 found that Savio's death was probably a homicide and not an accident. Regardless of the family's suspicions prior to that time, it was only after the additional autopsies were done, that Savio's family had any legal or proper factual support for a possible wrongful death claim. Based on the facts of the present case, we find that the trial court's implicit ruling–that the possible wrongful death claim was a newly discovered asset of the estate for the purpose of whether the estate should be reopened–was not against the manifest weight of the evidence.

Carrol and Peterson's assertion to the contrary, as to the issue before this court, is a distinction without a difference. It is clear that under Illinois law, a wrongful death claim may only be brought by the personal representative of the decedent. See 740 ILCS 180/2 (West 2006); Pasquale, 166 Ill. 2d at 361, 654 N.E.2d at 1378. Moreover, section 2.1 of the Wrongful Death Act specifically references a cause of action for wrongful death as being as asset of the decedent's estate. See 740 ILCS 180/2.1 (West 2006). Section 2.1 states, in pertinent part: "[i]n the event that the only asset of the deceased estate is a cause of action arising under this Act, and no petition for letters of office for his or her estate has been filed ***." 740 ILCS 180/2.1 (West 2006). The distinction to be made here is one of purpose. A wrongful death claim is not an asset of a decedent's estate for the purpose of whether it may be used to satisfy the claims of creditors of the estate. See Berard v. Eagle Air Helicopter Inc., 257 Ill. App. 3d 778, 781, 629 N.E.2d 221, 223 (1994). However, a newly

8

discovered wrongful death claim is an asset of a decedent's estate for the purpose of whether the estate may be reopened under section 24–9 inasmuch as letters have been filed in a closed estate. See 740 ILCS 180/2.1 (West 2006). Therefore, we affirm the portion of the trial court's ruling granting the petition to reopen Savio's estate.

Next, Peterson and Carrol argue that even if the trial court properly granted the petition to reopen Savio's estate, it was still error for the trial court to grant the remaining portion of the petition and to replace Carrol as executor with Savio's father and sibling. Peterson and Carrol contend that the trial court acted without giving effect to the statutory preference of Savio's minor children to nominate a successor executor, through Peterson, the children's guardian. Peterson and Carrol contend further that the instant action cannot be used to collaterally attack the prior administration of the estate. In the alternative, Peterson and Carrol assert that, at the very least, the trial court, before ruling on the matter, should have appointed a guardian ad litem to report on the best interests of the minor children as it pertains to the estate and the appointment of a successor executor.

Savio's father and siblings argue that the trial court's ruling is proper and should be affirmed. Savio's father and siblings assert that the undisputed fact that Carrol agreed to give away all of the possible assets of the estate in the divorce proceeding is cause for removal, as is the fact that Carrol mismanaged the estate and now has a conflict of interest in any possible wrongful death claim against his nephew, Peterson.

A trial court's ruling on a petition for removal of an executor under section 23–2 of the Act is subject to a manifest weight of the evidence standard of review on appeal. Debevec, 195 Ill. App. 3d at 897, 552 N.E.2d at 1047. An appellate court will not reverse a trial court's ruling in that regard unless it is against the manifest weight of the evidence. Debevec, 195 Ill. App. 3d at 897, 552 N.E.2d at 1047. A trial court's ruling is against the manifest weight of the evidence only if it is

9

unreasonable, arbitrary and not based on evidence, or when the opposite conclusion is clearly evident from the record. Smith, 377 Ill. App. 3d at 569, 880 N.E.2d at 1030.

A representative of a decedent's estate has a fiduciary relationship with the estate's beneficiaries. In re Estate of Storer, 131 Ill. App. 2d 1049, 1054, 269 N.E.2d 352, 355 (1971). For that reason, a representative is held to the highest standard of fair dealing and diligence when dealing with the estate. Storer, 131 Ill. App. 2d at 1054, 269 N.E.2d at 355-56. A court will scrutinize a representative's actions closely to insure that the representative has adhered to those high standards. In re Estate of Glenos, 50 Ill. App. 2d 89, 95, 200 N.E.2d 65, 68 (1964). Section 23–2 of the Probate Act provides that a representative may be removed for, among other listed reasons, waste or mismanagement of the estate, unsuitability for discharge of duties, or for other good cause. 755 ILCS 5/23–2 (West 2006). The procedure for removal is spelled out in section 23–3 of the Act. See 755 ILCS 5/23–3 (West 2006). When a representative is removed, a successor must be appointed. The Illinois statute creates an order of preference for who may serve as or nominate a representative. 755 ILCS 5/9–3 (West 2006). For purposes of this case, statutory preference would go first to Savio's children, then to her parents, and then to her siblings. See 755 ILCS 5/9–3 (West 2006). The statute provides further that any person who has been removed as representative under the Act may not name a successor. 755 ILCS 5/9–3 (West 2006).

Our review of this issue in the present case is complicated by the fact that at the hearing on the matter, no evidence was presented, only arguments. It does not appear from the record that the parties followed the statutory procedure for removal set forth in section 23–3 of the Act. However, no objection was made in the trial court by either side as to the manner of proceeding and no argument has been raised on that point here on appeal. Thus, at this point, any issue regarding the procedure followed in the trial court is forfeited. See Dowell v. Bitner, 273 Ill. App. 3d 681, 692,

10

652 N.E.2d 1372, 1380 (1995) (each party has the obligation to raise and present its issues in the trial court and the failure to do so will result in the forfeiture of those issues on appeal).

As for the underlying substance of this issue, the property division order from the divorce proceeding was made part of the trial court record when it was attached to the final report of the public guardian. In addition, the trial court was free to take judicial notice of that order. See Murdy v. Edgar, 103 Ill. 2d 384, 394, 469 N.E.2d 1085, 1090 (1984) (a court may take judicial notice of matters which are commonly known and of facts that are readily verifiable from sources of indisputable accuracy); Secrist v. Petty, 109 Ill. 188 (1883) (a court may take judicial notice of its own acts and records in the same case); People v. Davis, 65 Ill. 2d 157, 161, 357 N.E.2d 792, 794 (1976) (a court may take judicial notice of other cases in the same jurisdiction). The order showed that Carrol appeared in the divorce proceeding on behalf of the estate and essentially agreed to transfer all of Savio's interest in the marital property to Peterson individually. Regardless of whether we classify that action as mismanagement or other good cause, it would certainly provide a sufficient basis for removal of Carrol as executor. See 755 ILCS 5/23–2 (West 2006); Glenos, 50 Ill. App. 2d at 96-99, 200 N.E.2d at 68-69 (sufficient cause existed for removal of executor where executor had retained the services of a friend to act as broker to sell certain real property belonging to the estate, the friend was not licensed to sell property in that area and had never sold property in that area, and executor failed to follow through on repeated opportunities to sell the property at a higher price). Even from an objective standpoint, we can think of no just or fair reason why Carrol, as executor of the estate, would relinquish all of Savio's interest in the marital property to Peterson individually. That action was arguably contrary to the best interests of the estate and its beneficiaries and justifies the trial court's decision.

Nor do we find that the trial court erred in appointing Savio's father and sibling as successor

11

coexecutors of the estate. Upon removal, Carrol lost his right to name a successor executor. See 755 ILCS 5/9–3 (West 2006)). In addition, Peterson's and Carrol's brief on appeal somewhat concedes that because of the underlying allegations, a court would not be likely to allow Peterson to nominate a successor executor of Savio's estate. See Storer, 131 Ill. App. 2d at 1053, 269 N.E.2d at 355 (administrator who was potential defendant in wrongful death claim arising out of decedent's death suffered from an impossible conflict of interest)). Thus, we conclude that the portion of the trial court's ruling removing Carrol as executor and appointing Savio's father and sibling as successor coexecutors was not against the manifest weight of the evidence.

We are not persuaded that the decision in In re Estate of Cage, 381 Ill. App. 3d 110, 885 N.E.2d 477 (2008), cited by Peterson and Carrol, requires a different result in the present case. In Cage, the First District Appellate Court held that the mother of the decedent's children, acting as the guardian of the children, had a higher statutory preference than decedent's sister to nominate an administrator and could nominate herself as the administrator of the decedent's estate. Cage, 381 Ill. App. 3d at 113-15, 885 N.E.2d at 479-80. The facts of Cage are readily distinguishable from the facts of the present case in that the children's guardian in Cage was not also a likely defendant in a possible wrongful death suit resulting from the decedent's death. As noted above, there seems to be very little argument that under the circumstances of the present case, Peterson is not a suitable person to serve as or nominate a successor executor.

For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

Affirmed.

MCDADE, J. and SCHMIDT, J. concurring.