# Illinois Official Reports

## Appellate Court

---

| | |
|---|---|
| | ***In re Marriage of Prusak*, 2020 IL App (3d) 190688** |

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF JILL A. PRUSAK, Petitioner-Appellee, and LANCE R. PRUSAK, Respondent-Appellant. |
| District & No. | Third District<br>No. 3-19-0688 |
| Rule 23 order filed<br>Motion to<br>publish allowed<br>Opinion filed | May 12, 2020<br><br>June 15, 2020<br>June 15, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 11-D-195; the Hon. Derek W. Ewanic, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Myra A. Foutris, of Berger Schatz, of Chicago, for appellant.<br><br>Raleigh D. Kalbfleisch, of Wheaton, for appellee. |
| Panel | JUSTICE McDADE delivered the judgment of the court, with opinion.<br>Justice O'Brien concurred in the judgment and opinion.<br>Presiding Justice Lytton specially concurred, with opinion. |

**OPINION**

¶ 1 The petitioner, Jill A. Prusak, filed a petition to relocate the three children she had with the respondent, Lance R. Prusak, from Illinois to Indiana. The circuit court denied the petition after a hearing. Jill filed a motion to reconsider, which the court granted after hearing arguments. Lance appeals, arguing that the court erred when it granted the motion to reconsider. We reverse.

¶ 2 I. BACKGROUND[1]

¶ 3 The parties married in August 1995 in Indiana and later moved to Naperville, Illinois. They had three children together; M.P. (born July 18, 2001), W.P. (born February 7, 2004), and R.P. (born January 29, 2008). In January 2012, their divorce was finalized. Pursuant to the marital settlement agreement, the parties agreed to joint custody of the children with Jill being the primary residential parent. Lance was given visitation, *inter alia*, every other weekend and one evening per week. The custody judgment was later modified in 2016 to allow M.P. to live with Lance and for the parties to have essentially equal time with the children.

¶ 4 On March 22, 2019, Jill, who had been living in an apartment in Naperville, filed a petition to relocate the children to Evansville, Indiana. She alleged that five months after the custody judgment was modified in 2016, Lance sent M.P. back to live with her "and reduced his parenting time for all three children to one week night for dinner, every other weekend, divided holidays and two weeks in the summer." She further alleged that her employer had offered her a full-time remote position if she moved to Evansville, Indiana, which would in turn allow her and the children to enjoy a higher standard of living because she could no longer afford to live in Naperville.

¶ 5 In June 2019, Jill moved to Evansville without the children.

¶ 6 In July 2019, the circuit court held a hearing on Jill's petition at which three witnesses testified: the guardian *ad litem* (GAL), Jill, and Lance. The GAL testified that he performed an investigation after being assigned to the case, interviewing the parties, extended family members, doctors, and coaches. He also spoke with the children individually. He stated that the possibility of changing schools did not appear to matter to R.P., who wanted to live with Jill and not with Lance. W.P. did not appear comfortable discussing a change in schools. W.P. also indicated that he would be fine with moving to Evansville, although he appeared somewhat reluctant to change schools. W.P. also preferred to live with Jill over Lance.

¶ 7 The GAL opined that while there were difficult practical implications for parenting time if the relocation were allowed, he did not see the distance between Naperville and Evansville as presenting an insurmountable obstacle to fashioning a satisfactory parenting schedule. He also gave some recommendations, including Lance having one long weekend per month and substantial amounts of time at holidays and school breaks. Ultimately, the GAL opined that the relocation to Evansville should be allowed.

---

[1]We acknowledge that Jill initially argues that Lance's statement of facts violated Illinois Supreme Court Rule 341 (eff. May 25, 2018) by including argument. We have considered Jill's argument and hereby deny it.

¶ 8        Jill testified that she worked as a program manager for Waste Management in Lombard, Illinois. Her base salary was approximately $69,000 per year plus a yearly bonus; in 2018, her bonus was approximately $14,000. She stated that between February 2012 and June 2019, she had lived paycheck-to-paycheck in a Naperville apartment. She rented her new residence in Evansville, Indiana, from her mother, to whom she paid $1200 per month in rent, which was $600 lower than what her rent was in Naperville. During the rest of the summer of 2019, the children had split time between her residence and Lance's residence. She testified to a parenting plan similar to the one suggested by the GAL and stated while there were no direct flights between Chicago and Evansville, she would be willing to split the over five-hour drive to facilitate Lance seeing the children.

¶ 9        When asked if she had researched other places to live in Illinois, as she had claimed that she could no longer afford to live in Naperville, Jill stated that she had researched living in Plainfield and Bolingbrook. While she could find cheaper rent, she would have had to keep the same commute and switch schools for the children. Her new residence in Evansville offered a yard and more square footage than her Naperville residence. She also researched schools and extracurricular activities in the Evansville area and found them to have "A" ratings.

¶ 10       Jill worked exclusively out of her residence in Evansville, as her employer gave her the option of working remotely as long as she lived more than 55 miles from their office. Her schedule was flexible in that she was able to attend to the children's daily needs.

¶ 11       Jill had been the primary caregiver for the children, as she was a stay-at-home mother during the marriage and the primary residential parent after the divorce. She also testified that when M.P. came back to live with her, Lance reverted to having the children every other weekend. He also changed his one overnight weeknight with them to dinner only. Her mother lived in Evansville, as well as her sister, brother-in-law, aunt, and two cousins. The children had a strong bond with their maternal grandmother.

¶ 12       Lance testified that he exercised his regular and vacation parenting times. He allowed M.P. to return to living with Jill because he did not like to separate the children for visitation and because he wanted M.P. to spend as much time as possible with his siblings before he finished high school. Lance was also concerned about the effect that relocation would have on the children's extracurricular activities, homework, and friends. He was also concerned about not being able to see the children as frequently, support them in their extracurricular activities, or attend their parent-teacher conferences.

¶ 13       Lance worked at PNC Bank in downtown Chicago as a regional credit officer making $195,000 per year plus a yearly bonus, which had been over $30,000 each of the past two years. He was able to work from home anywhere between one and three days per week. He had lived in Naperville between October 2003 and October 2017, then in Oak Park until October 2019, when he returned to Naperville to live in an apartment in the same complex where Jill had lived prior to her move to Evansville. He moved there to keep the children at the same schools. His parents lived by Midway Airport, and he had aunts, uncles, and cousins in the area. The children saw Lance's parents regularly but not the extended family. He also stated that, since June, his father had come to his apartment 7 to 10 times to be with the children while he was at work.

¶ 14       On August 2, 2019, the circuit court issued its written decision on Jill's petition. Initially, the court noted that M.P. had turned 18 during the pendency of the petition and that its decision affected only the two younger children. Regarding statutory factors the court was required to

consider (see 750 ILCS 5/609.2(g) (West 2018)) that it found did not favor relocation, the court found Jill's claim that she could no longer afford to live in Illinois to be without merit, as "she gave little testimony towards her efforts to search for affordable housing in Illinois." Thus, the court found that relocation to Indiana was not necessary for her to increase her standard of living. The court also noted that regarding whether relocation would positively impact the children, Jill had only testified that the residence in Evansville was larger than her apartment in Naperville. The court also found that Lance's objections to relocation were meritorious and were corroborated by the GAL. Further, the court found that "the Chicago area [was] undoubtedly more diverse and offer[ed] more accessible cultural opportunities than [did] rural Indiana."

¶ 15      The court paid particular attention to whether a reasonable allocation of parental responsibilities could be established. Regarding this factor, the court stated:

"the court can likely fashion a schedule that works around W.P. and R.P.'s school schedules, giving much of the school year to the residential parent and much of the summer to the other. Both [the GAL] and Jill made recommendations of giving Lance one long weekend per month and significant holiday and summer parenting time. However, this Court is reluctant to do so for several reasons. While the minor children are 15 and 11 respectively, this Court believes that eleven hours in a car on a monthly basis would burden the minor children. There was minimal testimony as to the availability of air travel with no testimony being offered involving direct flights. Also, the proposed parenting time would also put undo [*sic*] strain on R.P., who it was testified, has a very strong bond with Jill. Extended summer visitation would result in R.P. being away from Jill for several weeks at a time. This suggested visitation would also inhibit R.P. from participating in baseball, which was the only extracurricular activity that he currently expresses interest in. Jill testified that if relocation is denied she would be unable to move back to Illinois. However, this Court notes that Jill moved herself to Indiana prior to this hearing and testified that she does not have a lease, nor is her employment with Waste Management dependent on her remaining in Evansville. This Court believes that it would be unlikely to fashion a reasonable allocation of parental responsibilities if relocation occurs."

¶ 16      Regarding statutory factors that the court found to be neutral, the court found that both parents had been involved in caring for the children and that Lance had diligently exercised his parenting time. The court also found that each party had family in their respective geographical areas to help care for the children. Further, the court found that due to Lance's income, travel costs would not be of significance and that travel would be done almost entirely by car. Additionally, the court found that both parties were willing to facilitate relationships between the children and the other parent and that the impacts of relocation could further be minimized through the use of Skype and FaceTime.

¶ 17      Regarding factors that favored relocation, the court found that 15-year-old W.P.'s preferences were communicated to the court via the GAL. W.P. did not want to live with Lance but was reluctant to change schools. Eleven-year-old R.P. was very attached to Jill such that he wanted to live with her, although the court found that it was hesitant to place significant weight on R.P.'s wishes due to his age.

¶ 18      At the close of its order, the court found that more factors weighed in favor of Lance; accordingly, Jill's petition was denied.

¶ 19     Jill filed a motion to reconsider, claiming that the circuit court "misapplied the majority of the statutory factors." In that motion, while discussing each of the statutory factors, Jill noted that since the hearing, she had learned that direct flights did exist between Chicago and Evansville. She also noted that since the hearing, the children had told her that Lance rarely works from home; that he returns home from work after 6 p.m. and even as late as 7 p.m.; that they often are not fed dinner until late, including once at 8 p.m.; and that according to R.P., Lance had left him at home alone with M.P. Further, Jill alleged that Lance had not hired anyone to take care of the children after they got home from school and before he returned home from work. Jill also included a list of what times Lance arrived home from work during the first three weeks of the two younger children's school year.

¶ 20     In his response to Jill's motion, Lance admitted (1) he had yet to hire a sitter, (2) he had his father and M.P. assist in watching the two younger children, and (3) he had returned home from work late on occasion. He demanded strict proof of the other related allegations Jill made in her motion.

¶ 21     The court heard arguments on Jill's motion on October 22, 2019. Counsel for Jill argued that the court had misapplied the law to the statutory factors and that there was new evidence not available to the court at the time of its decision. During argument, counsel stated that one portion of the new evidence was that direct flights did exist between Chicago and Evansville. The court sustained an objection to that alleged evidence, however, ruling that it was known or should have been known at the time of the hearing on the petition for relocation. Counsel later stated that another portion of new evidence was that Lance had failed to follow through on his plan to have his family or a sitter available for the children before he got home from work. Counsel alleged that Lance had left the children home alone and that no adult presence had been in Lance's residence on a regular basis to watch the children. Counsel for Lance did not object to this allegedly new evidence.

¶ 22     During his argument, counsel for Lance stated:

> "Dad has attempted to obtain a baby-sitter. He is doing everything that he can to ensure these kids are taken care of. They have not been left alone. They have either been with the parties' oldest child or [his] dad has occasionally shown up. And he has been unable to obtain a long-term care solution while all of this is up in the air because his interviews with sitters have indicated that nobody wants to commit unless they know they have got a long-term gig."

¶ 23     At the close of the hearing, the court stated that the most important statutory factor in this case was whether the court could fashion a reasonable parenting plan. In this regard, the court stated:

> "At the time of the hearing there was some questions by this Court. I certainly had some concerns as to the evidence presented whether or not there is a relevant—a parenting plan can be made. Based on the filing of the petition to reconsider, I have looked at the [*sic*] and reconsidered the evidence that was presented. And, again, *** the GAL, did present the opinion that was in favor of relocation and did testify that he thinks would be able to—he could fashion a reasonable parenting plan. Because again, [Lance], has shown through not only testimony to the Court that he gave in court but there was nothing adverse to the fact that he has always exercised his parenting time.

* * *

I do find that when I initially stated that I would be unable to [fashion a parenting plan that would be in the best interest of the children], that was an error. I think I can fashion a reasonable parenting plan for both—to protect the rights of both the parents and the children and one that is in the best interest of the children."

¶ 24 The court also noted that Lance had been having difficulty securing supervision for the children, which favored relocation. Based on these findings, the court granted Jill's motion to reconsider and set relocation to occur at the end of the children's current school semester.[2]

¶ 25 Lance appealed.

¶ 26                                    II. ANALYSIS

¶ 27 On appeal, Lance argues that the circuit court erred when it granted Jill's motion to reconsider.

¶ 28 Initially, we must clarify what is at issue in this appeal. Lance has appealed from the circuit court's grant of Jill's motion to reconsider, which granted the motion on two grounds: (1) the court believed it erred in the initial relocation decision when it found that a reasonable parenting plan could not be created and (2) Lance's post-relocation hearing difficulty in securing supervision for the children after they returned home from school and before he returned home from work weighed in favor of allowing relocation. We emphasize that the circuit court's original relocation decision is *not* at issue.

¶ 29 We note that the parties disagree on the appropriate standard of review. Lance contends that because the circuit court granted Jill's motion to reconsider on both legal and factual grounds, both *de novo* and abuse of discretion standards apply, respectively. Jill contends that because the general standard of review applicable to custody modification actions is manifest weight of the evidence (see, *e.g.*, *id.*), that standard should apply. She also argues that abuse of discretion review applies, at least regarding the statutory factor requiring consideration of whether a reasonable parenting plan could be created. Despite arguing in her motion to reconsider that the court misapplied the law, she now contends on appeal that rather than it finding that it misapplied the law, the court reconsidered the evidence on this factor.

¶ 30 "The purpose of a motion to reconsider is to bring to the trial court's attention a change in the law, an error in the trial court's previous application of existing law, or newly discovered evidence that was not available at the time of the prior hearing or decision." *Horlacher v. Cohen*, 2017 IL App (1st) 162712, ¶ 79. When faced with a challenge to the circuit court's ruling on a motion to reconsider, if the motion alleged that the court misapplied existing law, our review is *de novo*. *Id.* ¶ 80. When the motion to reconsider is based on new evidence, our review is abuse of discretion (*id.*), which occurs when "no reasonable person could agree with the position taken by the trial court" (*In re Estate of Wright*, 377 Ill. App. 3d 800, 803-04 (2007)). Accordingly, we apply *de novo* review to the circuit court's first basis for granting the motion to reconsider (the alleged error in the initial relocation decision finding that a reasonable parenting plan could not be created)[3] and abuse of discretion review to the court's

_____
[2]Lance filed a motion to stay enforcement of the court's order. The record indicates that Lance's motion was still pending at the time the appellate record was compiled and transmitted to this court.

[3]We note that the special concurrence asserts that the appropriate standard of review for this issue is whether the decision is against the manifest weight of the evidence. This assertion would be correct

- 6 -

second basis (Lance's post-relocation hearing difficulty in securing supervision for the children after they returned home from school and before he returned home from work weighing in favor of allowing relocation). We will address the latter basis first.

¶ 31 It is significant in this case that no presentation of evidence occurred at the hearing on the motion to reconsider. Rather, the circuit court heard arguments only. However, during her argument, counsel for Jill twice attempted to argue facts that were not admitted into evidence at the hearing on the petition for relocation. First, she attempted to state that direct flights did exist between Chicago and Evansville, but the circuit court sustained an objection to that statement, ruling that it was known or should have been known at the time of the hearing on the petition for relocation. Thus, to the extent that counsel for Jill tried offering that "evidence," it was rejected.

¶ 32 Second, counsel for Jill argued that since the hearing on the petition for relocation, Lance had failed to hire anyone to watch the children after they got home from school and before he returned from work, that he had left the children home alone, and that no adult presence had been in Lance's residence on a regular basis to watch the children. While it is true that counsel for Lance did not object to these arguments, we note that in his response to the motion to reconsider, Lance admitted only that he had not hired a sitter yet, that he had his father and M.P. watch the two younger children at times, and that he had returned home from work late on occasion; he demanded strict proof of the other related allegations that Jill made in her motion. The circuit court clearly accepted some of Jill's allegations as evidence, as it noted in its decision that Lance's "inability or difficulty in securing supervision for these children" was something the court could consider in its decision.

¶ 33 Of course, the admissibility of evidence is a matter within the circuit court's discretion. *In re Kenneth D.*, 364 Ill. App. 3d 797, 803 (2006). While we find no issue with the court accepting Lance's admissions into evidence, to the extent the court accepted any of Jill's unproven allegations into evidence, the court abused its discretion. See, *e.g.*, *Johnson v. Lynch*, 66 Ill. 2d 242, 246 (1977) (holding that arguments of counsel are not evidence).

¶ 34 Disregarding Jill's proffered but unproven allegations, we cannot agree that the admissions made by Lance were enough to sway the case in favor of allowing relocation. Again, Lance admitted only that he had not hired a sitter yet, that he had his father and M.P. watch the two younger children at times, and that he had returned home from work late on occasion. There was no competent evidence regarding how often either of the children, or both, had been left home alone—or if they even had been left home alone at all. It is pure speculation to find that Lance had done so and that such action was harmful. See, *e.g.*, 705 ILCS 405/2-3(1)(d) (West 2018) (defining, in relevant part, an abused minor as including "any minor under the age of 14 years whose parent *** leaves the minor without supervision for an unreasonable period of time without regard for the mental or physical health, safety, or welfare of that minor"); 720 ILCS 5/12C-10 (West 2018) (criminalizing, in relevant part, an act of a child's parent who, "without regard for the mental or physical health, safety, or welfare of that child, knowingly leaves that child who is under the age of 13 without supervision by a responsible person over

if we were reviewing the circuit court's original relocation decision. As previously stated, *supra* ¶ 29, we are reviewing the court's decision on the motion to reconsider. Further, *In re Estate of Savio*, 388 Ill. App. 3d 242 (2014), does not support the special concurrence's assertion, as *Savio* did not involve the review of a decision on a motion for reconsideration.

the age of 14 for a period of 24 hours or more" and listing numerous factors for a court to consider when determining if the child was left without regard for his or her mental or physical health, safety, or welfare). Under these circumstances, we hold that no reasonable person would agree with the circuit court that reconsideration was warranted on the new evidence. See *Wright*, 377 Ill. App. 3d at 803-04. Accordingly, we hold that the court abused its discretion when it granted reconsideration on this basis.

¶ 35    We now turn to the court's second basis for granting reconsideration—namely, that the court believed it erred in the initial relocation decision when it found that a reasonable parenting plan could not be created. Again, we review this issue *de novo*. *Horlacher*, 2017 IL App (1st) 162712, ¶ 80.

¶ 36    A circuit court must consider a relocation petition in light of the best interests of the child. 750 ILCS 5/609.2(g) (West 2018); *In re Marriage of Fatkin*, 2019 IL 123602, ¶ 32.

¶ 37    Section 609.2(g) provides the following list of factors that a court must consider when deciding whether to allow relocation:

"(1) the circumstances and reasons for the intended relocation;

(2) the reasons, if any, why a parent is objecting to the intended relocation;

(3) the history and quality of each parent's relationship with the child and specifically whether a parent has substantially failed or refused to exercise the parental responsibilities allocated to him or her under the parenting plan or allocation judgment;

(4) the educational opportunities for the child at the existing location and at the proposed new location;

(5) the presence or absence of extended family at the existing location and at the proposed new location;

(6) the anticipated impact of relocation on the child;

(7) whether the court will be able to fashion a reasonable allocation of parental responsibilities between all parents if the relocation occurs;

(8) the wishes of the child, taking into account the child's maturity and ability to express reasoned and independent preferences as to relocation;

(9) possible arrangements for the exercise of parental responsibilities appropriate to the parents' resources and circumstances and the developmental level of the child;

(10) minimization of the impairment to a parent-child relationship caused by a parent's relocation; and

(11) any other relevant factors bearing on the child's best interests." 750 ILCS 5/609.2(g) (West 2018).

"A determination of the best interests of the child cannot be reduced to a simple bright-line test, but rather must be made on a case-by-case basis, depending, to a great extent, upon the circumstances of each case." *In re Marriage of Eckert*, 119 Ill. 2d 316, 326 (1988); *In re Marriage of Kavchak*, 2018 IL App (2d) 170853, ¶ 65.

¶ 38    Our review of the record in this regard reveals no error in the circuit court's application of the law to the facts of this case. The court initially found that it was reluctant to fashion a parenting plan along the lines proposed by the GAL and Jill, noting that the children would be burdened by the significant travel time generally and R.P. specifically, due to his close relationship with Jill. The court also noted that fashioning such a schedule would likely cause

difficulties with extracurricular activities. We find no misapplication of the law in this regard, especially in light of the other statutory factors. In its detailed nine-page written decision, the court found it of particular significance that Jill failed to present sufficient evidence to support her claim that relocation was in the children's best interests. The law is clear that the burden of proof in relocation cases is on the party seeking to relocate. *Eckert*, 119 Ill. 2d at 325. As the court noted, Jill presented little to no testimony regarding her search for affordable housing in Illinois. While she presented some evidence that her new residence in Evansville was larger and had a yard, she did not have a lease in Evansville and her employment with Waste Management was not dependent on her living there. Thus, there was no showing that a move 5½ hours away by car out-of-state to Evansville, Indiana, was necessary to improve her and the children's standard of living.

¶ 39    Regarding other statutory factors, we note that Lance's reasons for objecting to the relocation were indeed legitimate and not motivated by a desire to frustrate the children's best interests. The parties had both been involved with caring for the children, and Lance also had been regularly exercising his visitation rights. Even if Evansville schools were comparable to the schools in Naperville, the Chicago area certainly provides greater diversity and cultural opportunities for the children. It is true that Jill had family support in the Evansville area, but that type of support already existed in the Naperville area. Also, while it is true that the two younger children wanted to live with Jill, this was not a factor that weighed in favor of relocation. Jill decided herself to move to Evansville prior to a ruling on her petition for relocation. A parent should not be allowed to benefit from such a preemptive decision when they fail to establish that relocating the children to that area is in that parent's and the children's best interests. In sum, under these circumstances, we find nothing in Jill's motion to reconsider to sustain her claim that the circuit court misapplied the law when it denied her petition for relocation.

¶ 40    For the foregoing reasons, we reverse the circuit court's decision that granted Jill's motion for reconsideration. The original order denying relocation remains in effect.

¶ 41                                III. CONCLUSION

¶ 42    The judgment of the circuit court of Will County is reversed. Reversed.


¶ 43    PRESIDING JUSTICE LYTTON, specially concurring:

¶ 44    I agree with the majority's decision to reverse the trial court's order. I write separately because I do not believe that the majority applied the proper standard of review to part of the trial court's reconsideration of its relocation decision.

¶ 45    The majority determined that *de novo* review applied to the trial court's determination that it erred in analyzing one of the best interest factors relevant to relocation. I disagree. The trial court stated that it committed an "error" in its original decision when it found that it could not "fashion a reasonable parenting plan *** to protect the rights of both the parents and the children." This alleged "error" was not an error in law, which is reviewed *de novo*. See *In re Estate of Savio*, 388 Ill. App. 3d 242, 246-47 (2009). Rather, it was an "error" in applying facts to law, which is reviewed under the manifest weight of the evidence. See *id.* at 247; *Shulte v. Flowers*, 2013 IL App (4th) 120132, ¶ 19. A court's decision is against the manifest weight of the evidence where the opposite conclusion is clearly apparent or where its findings are

unreasonable, arbitrary, or not based on the evidence presented. *In re Marriage of Kavchak*, 2018 IL App (2d) 170853, ¶ 65.

¶ 46 In *Shulte*, 2013 IL App (4th) 120132, ¶ 19, the appellate court reviewed the trial court's order granting a motion to reconsider under the manifest weight standard where the trial court made findings of fact and applied the law to the facts. The appellate court said that to apply the law, the trial court had to make factual findings, or there would be "nothing to which to apply the law." *Id.* ¶ 17. The court stated:

"If a motion for reconsideration requests the court to change its mind about its factual findings, we will find no abuse of discretion in the granting or denial of the motion unless the court's revised factual findings, or the factual findings to which it decided to adhere, are against the manifest weight of the evidence." *Id.* ¶ 22 (citing *People ex rel. City of Chicago v. Hollins*, 368 Ill. App. 3d 934, 942 (2006)).

¶ 47 Here, although Jill's motion urged the trial court to apply the law, "the whole point of the motion was that the court had erred in its evaluation of the evidence." *Id.* ¶ 18. Because Jill's motion required the trial court to make factual findings and apply law to the facts, the majority should have analyzed this issue under the manifest weight of the evidence standard. See *id.* ¶ 19.

¶ 48 Nevertheless, I conclude that if the majority had applied the proper standard of review, its decision would have been the same. In changing its mind on relocation at the reconsideration hearing, the court stated that the "most important" factor was its ability to create a visitation plan that would reasonably allocate parental responsibilities. In its original decision, the court determined that it could not "fashion a reasonable allocation of parental responsibilities" that would also be in the best interests of the children because relocation would cause the children to be burdened by lengthy travel, prevent them from participating in extracurricular activities, and place undue stress on the youngest child, who has a very close relationship with his mother. At the hearing on the motion to reconsider, no new evidence was presented on this factor. Nevertheless, the trial court determined that it could "fashion a parenting plan that would be in the best interest of the children" without any explanation as to how the negative impacts it previously cited would be diminished or eliminated.

¶ 49 The trial court's determination at the reconsideration hearing was not supported by the evidence because the trial court had previously found, under the same evidence, that a parenting plan could not be fashioned to reasonably allocate parental responsibilities between the parties. Based on the facts of this case, the trial court's decision, on reconsideration, to grant the relocation petition was against the manifest weight of the evidence and must be reversed.

¶ 50 In reaching this conclusion, I am mindful that a trial court's decision regarding relocation is entitled to great deference. See *In re Marriage of Eckert*, 119 Ill. 2d 316, 330 (1988). Nevertheless, I find that reversal is necessary here, where the trial court initially thoroughly analyzed the relevant relocation factors and determined that relocation should be denied and then on reconsideration and with no new evidence presented on the factor the court deemed "most important" determined that relocation should be granted. Based on the unique facts of this case, the trial court's decision on reconsideration is not based on the evidence presented and, therefore, against the manifest weight of the evidence.